SECURITIES AND EXCHANGE COMMISSION *v.* UNITED STATES REALTY & IMPROVEMENT CO.

No. 796.   Argued April 29, 30, 1940.—Decided May 27, 1940.

*Solicitor General Biddle,* with whom *Messrs. Richard H. Demuth, Chester T. Lane, Martin Riger, Samuel H. Levy, Raoul Berger,* and *Homer Kripke* were on the brief, for petitioner.

438

*Messrs. Joseph M. Hartfield* and *Henry M. Marx*, with whom *Mr. Charles W. Dibbell* was on the brief, for respondent.

Mr. Justice Stone delivered the opinion of the Court.

The questions are whether respondent's petition for an arrangement of its unsecured debts under Chapter XI of the Bankruptcy Act should be dismissed because the relief obtainable under that chapter is inadequate, and whether the Securities and Exchange Commission is entitled to raise and litigate that question by intervention and appeal.

Respondent, a New Jersey corporation doing business in New York as owner of and manager of real estate invest-

ments, has outstanding 900,000 shares of capital stock without par value, which are listed on the New York Stock Exchange and are stated by respondent to be held by some seven thousand stockholders. It has liabilities of $5,051,-416, of which only $74,916 is current. This indebtedness includes two series of publicly held debentures aggregating $2,339,000, maturing January 1, 1944, which are secured by a pledge of corporate stock of little value and a $3,000,000 note, due August 12, 1939, which is secured by a first mortgage owned by respondent. In addition respondent is also liable as a guarantor of payment, principal and interest, and sinking fund of mortgage certificates in the sum of $3,710,500, issued by its wholly owned subsidiary Trinity Building Corporation of New York and now in the hands of some nine hundred holders. These certificates have been in default for failure to pay interest, principal and sinking fund since January 1, 1939. They are secured by mortgage of real estate and buildings which are Trinity's only substantial assets. Each year since 1936 respondent has suffered a net loss in the conduct of its business and is now unable to pay its debts as they mature.[1]

Before maturity of the first mortgage certificates, respondent and the Trinity Company joined in proposing to certificate holders a plan for the modification of the

---

[1] The alleged value of debtor's assets is $7,076,515. Of this $5,200,000 is represented by the stock of the subsidiary and a first mortgage on a building owned by the subsidiary which is pledged to secure respondent's $3,000,000 note. Current assets are less than $400,000. The balance of the assets consists chiefly of mortgages, loans and other securities in the amount of $555,655, an investment of $477,300 in securities of an independent company, unimproved real estate valued at $290,000, and a note receivable from a subsidiary of $137,500. As against the total nominal value of these assets of $7,076,515, the debtor's total liabilities, including its liability on the matured debenture certificates, are $9,261,916.

obligation of the certificates, leaving unaffected the other indebtedness and stock of respondent. By this plan the maturity of the certificates was to be extended, the rate of interest reduced, and the terms of the provisions for payment of the sinking fund modified. Respondent's guarantee as to the extension and interest was to be modified accordingly, and its guarantee of sinking fund payments was to be eliminated. The plan was to be consummated by resort to two proceedings, one to be instituted by respondent under Chapter XI of the Bankruptcy Act, 11 U. S. C. Supp. V, § 701 *et seq.*, 52 Stat. 840, 905, for an "arrangement" modifying its guarantee of the certificates in the manner already indicated. The other was to be instituted on behalf of Trinity in the New York state courts under the Burchill Act, New York Real Property Law, §§ 121–123, to secure the appropriate modification of Trinity's primary obligation on the certificates. The plan provided that the modification of respondent's guarantee by the Chapter XI proceeding should stand, even though the state court should refuse to confirm the proposed modification of Trinity's obligation on the certificates. When the assent to the plan of holders of certificates amounting to approximately 55 per cent. in number and amount, had been obtained, the present proceeding was begun May 31, 1939, by the filing in the district court for Southern New York of a petition praying that the proposed "arrangement" affecting the unsecured indebtedness of respondent be approved.

The district court found that the petition was properly filed [2] under § 322 of Chapter XI of the Bankruptcy Act,

---

[2] The record shows that counsel for one of the committees of bondholders interposed objections to the Chapter XI proceedings and proposed to file an involuntary petition under Chapter X. The district judge expressed the opinion that a Chapter X proceeding was preferable, but when the debtor agreed to make an immediate interest

and directed that respondent debtor continue in possession of the property. On July 18, 1939, the district court entered an order permitting the Securities and Exchange Commission to intervene. The motions of the Commission to vacate the order approving the debtor's petition, to dismiss the proceeding under Chapter XI, and to deny confirmation of the proposed arrangement, were denied by the district court and the cause was referred to a referee for further proceedings. On appeal by the Commission from these several orders and on appeal of the respondent from the order of the district court permitting the Commission to intervene, the appeals being consolidated and heard together, the Court of Appeals for the Second Circuit reversed the order permitting the Commission to intervene and dismissed the appeal of the Commission. 108 F. 2d 794. We granted certiorari, 309 U. S. 649, the questions raised being of public importance in the administration of the Bankruptcy Act.

The Court of Appeals held that the proceeding to secure approval of the arrangement, embodied in the plan proposed by respondent, was properly brought under Chapter XI of the Bankruptcy Act; that the intervention by the Commission was not authorized by any provision of the Bankruptcy Act and that it had no interest affected by the proceeding under that chapter entitling it to intervene under the applicable rules controlling intervention in the federal courts, and that consequently it was not aggrieved by the order appealed from and so was not entitled to maintain its appeal.

The Commission argues that Chapter X of the Bankruptcy Act prescribes the exclusive procedure for reorganization of a large corporation having its securities

payment of one and one-half per cent. for the purpose of dissuading the creditors from filing the Chapter X petition, and when the objecting creditors accepted the offer and dropped the involuntary petition, the judge felt compelled to continue the Chapter XI proceeding.

outstanding in the hands of the public such as respondent,[3] and that consequently the district court was without jurisdiction to entertain respondent's petition under Chapter XI; that in any case the district court should have dismissed the petition because in the circumstances no fair and equitable arrangement affecting respondent's unsecured creditors alone such as is prescribed by Chapter XI, can be consummated in a proceeding under that chapter. Such being the status of the cause under Chapter XI, the Commission insists that it was properly allowed to intervene in order to protect the interest of the public specially committed to its guardianship by the provisions of Chapter X, and to forestall the impairment of its own functions under that chapter by an unauthorized or improper resort by respondent to Chapter XI, and that for the same reason the Commission was entitled to appeal from the order of the district court refusing to dismiss the Chapter XI proceedings.

To this it is answered, as the Court of Appeals held, that respondent, although a large corporation with its securities widely distributed in the hands of the public, is nevertheless within the literal terms of Chapter XI, which unqualifiedly authorizes a debtor to petition under that chapter for an arrangement with respect to its unsecured indebtedness, and that the district court was accordingly bound to entertain the petition, however desirable it might be that the reorganization should proceed

---

[3] By § 126 a corporation or three or more creditors may file a petition under Chapter X.

By § 130 every petition shall state:

"(1) that the corporation is insolvent or unable to pay its debts as they mature;

"(2) the applicable jurisdictional facts requisite under this chapter;

'(7) the specific facts showing the need for relief under this chapter and why adequate relief cannot be obtained under chapter XI of this Act; . . ."

446

under Chapter X, whose procedure is better adapted in cases like the present to protect the public interest and to secure a fair and equitable reorganization, than are the provisions of Chapter XI.

Chapter XI provides a summary procedure by which a debtor may secure judicial confirmation of an "arrangement" of his unsecured debts. The debtor, who is defined as a "person who could become a bankrupt under § 4 of the Act," § 306 (3), may, according to §§ 4 and 1 (23), be any person (which includes corporations), except a municipal, railroad, insurance or banking corporation or a building and loan association. The debtor files his original voluntary petition for an arrangement in such a court as would have jurisdiction of a petition in ordinary bankruptcy [4] and must file with the petition the proposed arrangement. §§ 322, 323. An arrangement is defined as "any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts upon any terms." § 306 (1). The unsecured debtors may be treated generally or in classes. §§ 356, 357.

It is evident that the language of the sections to which we have referred in terms confers on the court jurisdiction of a petition for an arrangement, which the present petition is, filed by a debtor, which the respondent is, in the technical sense that it confers on the court power to make orders in the cause which are not open to collateral attack. See *Pennsylvania* v. *Williams*, 294 U. S. 176, 180, *et seq.* But the Commission points out that a proceeding begun under Chapter X may be begun and continued under that chapter only if the petition is filed in good faith, §§ 130 (7), 143, 146 (2), 221, and that under § 146 (2) "a petition shall be deemed not to be filed in good faith if . . . (2) adequate relief would be obtainable by a debtor's peti-

[4] § 311 confers on the court in which the petition is filed exclusive jurisdiction of the debtor and his property, where not inconsistent with the provisions of the chapter.

tion under the provisions of chapter XI"; that Chapter X, devised as a substitute for the equity receivership, is specially adapted to the reorganization of large corporations whose securities are held by the public, and sets up a special procedure for the protection of widely scattered security holders and the public through the intervention of the Commission, while Chapter XI, which is peculiarly adapted to the speedy composition of debts of small individual and corporate businesses, omits the machinery for reorganization set up by Chapter X, and contains no provision for participation by the Commission in a proceeding under Chapter XI. From this it argues that the district court was without jurisdiction to entertain respondent's petition under Chapter XI, and the readjustment of its indebtedness through judicial action can properly proceed only with the safeguards, public and private, afforded by Chapter X.

While we do not doubt that in general, as will presently appear more in detail, the two chapters were specifically devised to afford different procedures, the one adapted to the reorganization of corporations with complicated debt structures and many stockholders, the other to composition of debts of small individual business and corporations with few stockholders, we find in neither chapter any definition or classification which would enable us to say that a corporation is small or large, its security holders few or many, or that its securities are "held by the public," so as to place the corporation exclusively within the jurisdiction of the court under one chapter rather than the other. But granting the jurisdiction of the court, the question remains of the propriety, in the circumstances, of its order retaining jurisdiction, and of the extent of its duty to go forward with the proceeding under Chapter XI in the face of the contention that Chapter X alone affords a remedy adequately protecting the public and private interests involved. The answer

turns not on the court's statutory jurisdiction to entertain a proceeding under Chapter XI, but on considerations growing out of the public policy of the Act found both in its legislative history and in an analysis of its terms, and of the authority of the court clothed with equity powers and sitting in bankruptcy to give effect to that policy through its power to withhold relief under Chapter XI when relief is available under Chapter X, which is adequate and more consonant with that policy.

Before the enactment of § 77B of the Bankruptcy Act, 48 Stat. 911, 912, the bankruptcy mechanism was designed for the final liquidation of the bankrupt's estate, except to the extent only that a compromise with creditors was authorized by §§ 12, 74. Bankruptcy afforded no facilities for corporation reorganization, which, in consequence, could be effected only through resort to the equity receivership with its customary mortgage foreclosures and its attendant paraphernalia of creditors' and security holders' committees, and of rival reorganization plans. Lack of knowledge and control by the court of the conditions attending formulation of reorganization plans, the inadequate protection of widely scattered security holders, the frequent adoption of plans which favored management at the expense of other interests, and which afforded the corporation only temporary respite from financial collapse, so often characteristic of reorganizations in equity receiverships, led to the enactment of 77B.[5]

The creation of the Securities and Exchange Commission, specially charged by various statutes with the protection of the interests of the investing public,[6] and

---

[5] See S. Doc. No. 65, 72d Cong., 1st Sess., p. 90; H. Rept. No. 1049, 75th Cong., 1st Sess., p. 2.

[6] The basic assumption of Chapter X and other acts administered by the Commission is that the investing public dissociated from control or active participation in the management, needs impartial and expert administrative assistance in the ascertainment of facts, in the

observed inadequacies of § 77B,[7] led to its revision and enactment in changed form as Chapter X, so as to provide for a larger measure of control by the court over security holders' committees and the formulation of reorganization plans and to secure impartial and expert administrative assistance in corporate reorganizations through participation of the Commission. Except where the liabilities are less than $250,000, Chapter X requires the appointment of a disinterested trustee, §§ 156–158, and a thorough examination and study by the trustee of the debtor's financial problems and management, § 167 (3) (5). The trustee is required to report the result of his study, to send the report to all security holders with

detection of fraud, and in the understanding of complex financial problems. See, e. g., Securities Act of 1933, 48 Stat. 74, 15 U. S. C. §§ 77a-77aa; Securities and Exchange Act of 1934, 48 Stat. 881, 15 U. S. C. § 78; Public Utility Holding Company Act of 1935, 49 Stat. 838, 15 U. S. C. Supp. V, § 79; Trust Indenture Act of 1939, 53 Stat. 1149, 15 U. S. C. Supp. V, §§ 77aaa-77bbbb.

[7] The revision of 77B resulted from the investigation of a Special Senate Committee to Investigate Receivership and Bankruptcy Proceedings, S. Doc. No. 268, 74th Cong., 2d Sess.; and from a study by the Securities and Exchange Commission of the degree of protection afforded to the investing public in reorganizations. Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees (1936–1939). See Hearings before the Committee on the Judiciary on H. R. 8046, 75th Cong., 1st Sess.; Hearings before a Subcommittee of the Senate Committee on the Judiciary on H. R. 8046, 75th Cong., 2d Sess.; H. Rept. No. 1409, 75th Cong., 1st Sess.; S. Rept. No. 1916, 75th Cong., 3d Sess. See Dodd, The Securities and Exchange Commission's Reform Program for Bankruptcy Reorganizations, 38 Col. L. Rev. 223; Swaine, "Democratization" of Corporate Reorganizations, 38 Col. L. Rev. 256; Heuston, Corporate Reorganizations under the Chandler Act, 38 Col. L. Rev. 1199; Teton, Reorganization Revised, 48 Yale L. J. 573; Gerdes, Corporate Reorganizations—Changes Effected by Chapter X of the Bankruptcy Act, 52 Harv. L. Rev. 1; Rostow and Cutler, Competing Systems of Reorganization, Chapters X and XI of the Bankruptcy Act, 48 Yale L. J. 1334.

notice to submit to him proposals for a plan of reorganization, § 167 (5) (6). He then formulates a plan or reports the reasons why a plan cannot be formulated, § 169. By § 176 consent to a plan in advance of its initial approval by the judge is void unless procured with his consent. A large measure of control is given to the court over the reorganization and of committees of security holders and their compensation, §§ 163, 165, 209, 212, 241–243.

If the judge finds the plan presented worthy of consideration he may refer it to the Commission for report and must do so where the liabilities of the debtor, as in the present case, exceed $3,000,000, § 172. When the plan is submitted to creditors after approval by the judge it is accompanied by the report of the Commission and the opinion of the judge approving the plan, § 175. The Commission with the approval of the court is authorized to participate generally in the proceedings as a party, and it is its duty to do so upon request of the court, § 208.

No comparable safeguards are found in Chapter XI.[8] Every phase of the procedure bearing on the administration of the estate and the development of the arrangement is under the control of the debtor. The process of formulating an arrangement and the solicitation of consent of creditors, sacrifices to speed and economy every safeguard, in the interest of thoroughness and disinterest-

---

[8] Chapter XI was sponsored by the National Association of Credit Men and other groups of creditors' representatives expert in bankruptcy. Hearings before the House Committee on the Judiciary on H. R. 6439 (reintroduced and passed in 1938 as H. R. 8046), 75th Cong., 1st Sess., pp. 31, 35. Their business of representing trade creditors in small and middle-sized commercial failures is an important factor in the background of the chapter. See, Montgomery, Counsel for the Association of Credit Men, on Arrangements, 13 J. N. A. Ref. Bankruptcy, 17.

edness, provided in Chapter X. The debtor is generally permitted to stay in possession and operate the business under the supervision of the court, § 342, and a trustee is provided for only in the case where a trustee in bankruptcy has previously been appointed and is in possession, or if "necessary" a receiver may be appointed. § 332. The debtor proposes the arrangement, §§ 306 (1), 323, 357, and the only opportunity afforded the creditors in respect to the proposed plan is to accept or reject it as submitted by the debtor. Acceptances may be solicited either before or after filing the petition and always before approval of the plan by the court, § 336 (4). Section 361 authorizes confirmation of an arrangement when accepted by all the creditors affected by it, "if the court is satisfied that the arrangement and the acceptance are in good faith," and § 362 permits confirmation if only a majority of the creditors affected accept. The arrangement is to be confirmed if the court is satisfied that "(1) the provisions of this chapter have been complied with; (2) it is for the best interests of the creditors; (3) it is fair and equitable and feasible . . .; and (5) the proposal and its acceptance are in good faith . . ." § 366.

There are no provisions for an independent study of the debtor's affairs by court or trustee, or for advice by them to creditors with respect to their rights or interests in advance of their consent to the arrangement. Committees of the creditors are permitted, §§ 334, 338, but there is no restriction on or supervision over their selection and conduct as in Chapter X. The arrangement may be consummated at the conclusion of a single creditors' meeting. The court in passing upon the arrangement, is without the benefit of investigation and study by the trustee or Commission, which Congress has required in reorganization proceedings under Chapter X, and is then faced with the fact that a majority of the creditors have already accepted the plan.

Still more important are the differences in the remedies obtainable under the two chapters which result from differences in the nature of the two proceedings and in the securities which may be affected by them. A plan under Chapter X may affect one or more classes of debts or securities of the corporation to be reorganized, and a subsidiary of the debtor may be brought into such a proceeding and reorganized with the debtor. § 129. Under Chapter XI only the rights of unsecured creditors of the debtor may be arranged and this without alteration of the status of any other classes of security holders or of subsidiaries. Both chapters provide for confirmation of the plan or arrangement by the judge "if satisfied that" it "is fair and equitable and feasible" and if "the proposal" of the plan or arrangement "and its acceptance are in good faith," §§ 221, 366. "Fair and equitable," taken from § 77B and made the condition of confirmation under both Chapter X or Chapter XI are "words of art" having a well understood meaning in reorganizations in equitable receiverships and under § 77B which is incorporated in the structure of both Chapters X and XI. See *Case* v. *Los Angeles Lumber Products Co.*, 308 U. S. 106, 115, *et seq.* The phrase signifies that the plan or arrangement must conform to the rule of *Northern Pacific Ry. Co.* v. *Boyd,* 228 U. S. 482, which established the principle which we recently applied in the *Los Angeles* case, that in any plan of corporate reorganization unsecured creditors are entitled to priority over stockholders to the full extent of their debts and that any scaling down of the claims of creditors without some fair compensating advantage to them which is prior to the rights of stockholders is inadmissible.

Since the sections under Chapter XI already considered admit of an "arrangement" only with respect to unsecured creditors without alteration of the relations of any other

class of security holders, and since it contemplates, as required by § 366, that the arrangement shall be fair and equitable within the meaning of the *Boyd* case, it is evident that Chapter XI gives no appropriate scope for an arrangement of an unsecured indebtedness held by some nine hundred individual creditors of a corporation having seven thousand stockholders. The hope of securing an arrangement which is fair and equitable and in the best interests of unsecured creditors, without some readjustment of the rights of stockholders such as may be had under Chapter X, but is precluded by Chapter XI, is at best but negligible, and, if accomplished at all, must be without the aids to the protection of creditors and the public interest which are provided by Chapter X, and which would seem to be indispensable to a just determination whether the plan is fair and equitable.

Respondent suggests that the proposed arrangement may be taken to satisfy the test of the *Boyd* case since under it the certificate holders would receive a new guarantee, enforcible as to principal notwithstanding the New York moratorium law, in place of the old guarantee to which that law applies. See *Honeyman* v. *Hanan*, 275 N. Y. 382; 9 N. E. 2d 970, appeal dismissed 302 U. S. 375. It also insists that it is not impossible that an arrangement of its unsecured indebtedness under Chapter XI may be proposed which would meet the test. It states that, availing itself of the privilege afforded by § 363, it has proposed an amended arrangement which is not in the record and the terms of which are not disclosed. But it suggests that the arrangement could be amended so as to provide for a ratable distribution to certificate holders of preferred stock of Trinity, respondent's subsidiary, held by respondent or for a similar distribution of cash. But such suggestions raise the question whether the supposed advantage to the creditors is a fair and adequate substitute for the elimination of stockholders within the

requirements of the *Boyd* case—a question which obviously cannot be answered with any assurance in the present case without resort to the facilities for investigation of the financial condition and structure of the debtor and its subsidiary, and to the expert aid and advice of the Commission available under Chapter X.

Confirmation of an arrangement follows a finding of the court that it is for the best interests of the creditors, § 366 (2). Here determination of what is in the "best interest of the creditors" depends on the answer to the question whether the stockholders should be eliminated or the creditors should receive some substitute compensation, and whether that compensation is fair and equitable. In a situation like the present it is in the best interests of the creditors that these questions should be answered in a Chapter X proceeding.

While this means that arrangements of unsecured debts of corporations, like respondent, may not be "in the best interests of creditors" and "feasible" under Chapter XI, it does not mean that there is no scope for application of that chapter in many cases where the debtor's financial business and corporate structure differ from respondent's. This is especially the case with small individual or corporate business where there are no public or private interests involved requiring protection by the procedure and remedies afforded by Chapter X. In cases where subordinate creditors or the stockholders are the managers of its business, the preservation of going-concern value through their continued management of the business may compensate for reduction of the claims of the prior creditors without alteration of the management's interests, which would otherwise be required by the *Boyd* case. See *Case* v. *Los Angeles Lumber Products Co., supra,* 121, 122.

Under § 146 (2) a petition may not be filed under Chapter X unless the judge is satisfied that "adequate relief" would not be obtainable under Chapter XI.

Obviously the adequacy of the relief under Chapter XI must be appraised in comparison with that to be had under Chapter X, and in the light of its effect on all the public and private interests concerned including those of the debtor. Applying this test, if respondent had proceeded under Chapter X the judge would have been compelled upon inquiry to approve its petition on the ground that it complied with the requirements of Chapter X, and that adequate relief could not be obtained under Chapter XI. That being the case the question here is whether, in the absence of any provision of Chapter XI specifically authorizing the dismissal of the petition, the district court should on that ground have dismissed the proceeding under Chapter XI, leaving respondent free to proceed under Chapter X, which affords every remedy which could be obtained under Chapter XI and more.

A bankruptcy court is a court of equity, § 2, 11 U. S. C. §11, and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act. *Bardes* v. *Hawarden Bank*, 178 U. S. 524, 534, 535; *Continental Illinois Nat. Bank & T. Co.* v. *Chicago, R. I. & P. Ry. Co.*, 294 U. S. 648, 675; *Wayne United Gas Co.* v. *Owens-Illinois Glass Co.*, 300 U. S. 131; *Pepper* v. *Litton*, 308 U. S. 295. A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest. It may in the public interest, even withhold relief altogether, and it would seem that it is bound to stay its hand in the public interest when it reasonably appears that private right will not suffer. *Pennsylvania* v. *Williams, supra*, 185 and cases cited; *Virginian Ry. Co.* v. *Federation*, 300 U. S. 515, 549, *et seq.* Before the provisions for alternative remedies were brought into the Bankruptcy Act by Chapters X and XI the occasion was rare when a court could have felt free to deny a petition in order to serve some public

or collateral interest at the expense of the petitioner's right to an adjudication. But here respondent, if dismissed, need not go without remedy. All that it can secure rightly or equitably in a Chapter XI proceeding is to be had in a Chapter X proceeding. The case stated most favorably to respondent is that it has proposed an arrangement which appears on its face not to be "fair and equitable" and hence not to be entitled to confirmation under Chapter XI. Respondent's circumstances, as disclosed by its petition and proposed arrangement, are such as to raise a serious question whether any fair and equitable arrangement in the best interest of creditors can be effected without some re-arrangement of its capital structure. In any case, that and subsidiary questions cannot be answered in the best interest of creditors without recourse to the procedure of a Chapter X proceeding. Pending the litigation respondent seeks to stay the hand of its creditors and in the meantime to avoid that inquiry into its financial condition and practices and its business prospects, provided for by Chapter X, without which there is at least danger that any adjustment of its indebtedness will not be just and equitable, and that its revived financial life will be too short to serve any public or private interest other than that of respondent.

In this situation, we think the court was as free to determine whether the relief afforded by Chapter XI was adequate as it would have been if respondent had filed its petition under Chapter X. What the court can decide under § 146 of Chapter X as to the adequacy of the relief afforded by Chapter XI, it can decide in the exercise of its equity powers under Chapter XI for the purpose of safeguarding the public and private interests involved and protecting its own jurisdiction from misuse. Here, we think it was plainly the duty of the district court in the exercise of a sound discretion to have dismissed the

petition, remitting respondent if it was so advised to the initiation of a proceeding under Chapter X, in which it may secure a reorganization which, after study and investigation appropriate to its corporate business structure and ownership, is found to be fair, equitable and feasible, and in the best interest of creditors. While a bankruptcy court cannot, because of its own notions of equitable principles, refuse to award the relief which Congress has accorded the bankrupt, the real question is, what is the relief which Congress has accorded the bankrupt and is it more likely to be secured in a Chapter X or Chapter XI proceeding? In answering it we cannot assume that Congress has disregarded well settled principles of equity, the more so when Congress itself has provided that the relief to be given shall be "fair and equitable and feasible." Good sense and legal tradition alike enjoin that an enactment of Congress dealing with bankruptcy should be read in harmony with the existing system of equity jurisprudence of which it is a part.

If respondent had sought relief by way of an equity receivership such would have been the duty of the court. *Pennsylvania* v. *Williams, supra.* We think it is no less so here. Before the enactment of Chapters X and XI, the district court in a 77B proceeding was "not bound to clog its docket with visionary or impracticable schemes of resuscitation," however honest the efforts of the debtor and however sincere its motives, and it was its duty to dismiss the proceeding whenever it appeared that a fair and equitable plan was not feasible, leaving the debtor to the alternative remedy of bankruptcy liquidation, see *Tennessee Publishing Co.* v. *American National Bank,* 299 U. S. 18, 22. And it has long been the practice of bankruptcy courts to permit creditors or others not entitled to file pleadings or otherwise contest the allegations of a petition, to move for the vacation of an adjudication

or the dismissal of a petition on grounds, whether strictly jurisdictional or not,[9] that the proceeding ought not to be allowed to proceed.

The Court of Appeals thought that the Commission had no such special interest as to entitle it to intervene as of right in the Chapter XI proceeding and concluded that the district court erred in permitting the intervention and that from this it followed that the Commission had no right to appeal. Its decision is in effect that a governmental agency not asserting the right to possession or control of specific property involved in a litigation may not be permitted to intervene without statutory authority. Neither Chapter X nor Chapter XI, in terms, gives a right of "intervention," but the Commission is authorized, with the permission of the court, to appear in any Chapter X proceedings, § 208. Such right as the Commission may have to intervene in a Chapter XI proceeding is, therefore, governed by the Rules of Civil Procedure and the general principles governing intervention. We are not here concerned with the refinements of the distinction between intervention, as a matter of right, which the Court of Appeals thought was restricted to cases where the intervenor has a direct pecuniary interest in the litigation, and permissive intervention, a distinction which has been preserved by Rule 24 of the Rules of Civil Procedure. For here the question is not of the Commission's intervention "as of right," but whether the district court abused its discretion in permitting it to intervene.

The Commission is, as we have seen, charged with the performance of important public duties in every case brought under Chapter X, which will be thwarted, to the

---

[9] *Royal Indemnity Co.* v. *American Bond & Mortgage Co.*, 61 F. 2d 875, aff'd 289 U. S. 165; *In re Ettinger*, 76 F. 2d 741; *Chicago Bank of Commerce* v. *Carter*, 61 F. 2d 986; *Vassar Foundry Co.* v. *Whiting Corp.*, 2 F. 2d 240; *In re Nash*, 249 F. 375.

public injury, if a debtor may secure adjustment of his debts in a Chapter XI proceeding when, upon the applicable principles which we have discussed, he should be required to proceed, if at all, under Chapter X. The Commission's duty and its interest extend not only to the performance of its prescribed functions where a petition is filed under Chapter X, but to the prevention, so far as the rules of procedure permit, of interferences with their performance through improper resort to a Chapter XI proceeding in violation of the public policy of the Act which it is the duty of the court to safeguard by relegating respondent to a Chapter X proceeding. The Commission did not here intervene to perform the advisory functions required of it by Chapter X, but to object to an improper exercise of the court's jurisdiction which, if permitted to continue, contrary to the court's own equitable duty in the premises, would defeat the public interests which the Commission was designated to represent. Sen. Rep. No. 1916, 75th Cong., 3d Sess., p. 31.

Rule 24 of the Rules of Civil Procedure, made applicable to bankruptcy proceedings by paragraph 37 of the General Orders in Bankruptcy, authorizes "permissive intervention." It directs that "upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of. the original parties." This provision plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation. Cf. *Pennsylvania* v. *Williams, supra.* If, as we have said, it was the duty of the court to dismiss the Chapter XI proceeding because its maintenance there would defeat the public interest in having any scheme of reorganization of re-

spondent subjected to the scrutiny of the Commission, we think it plain that the Commission has a sufficient interest in the maintenance of its statutory authority and the performance of its public duties to entitle it through intervention to prevent reorganizations, which should rightly be subjected to its scrutiny, from proceeding without it. *The Exchange,* 7 Cranch 116; *Stanley* v. *Schwalby,* 147 U. S. 508; *Interstate Commerce Comm'n* v. *Oregon-Washington R. Co.,* 288 U. S. 14; *Pennsylvania* v. *Williams, supra.* See, *Hopkins Savings Assn.* v. *Cleary,* 296 U. S. 315. Cf. *In re Debs,* 158 U. S. 564; *New York* v. *New Jersey,* 256 U. S. 296, 307–308.

This interest of the Commission does not differ from that of a liquidator under a state statutory proceeding who may, in a proper case, intervene in an equity receivership in a federal court to ask the court to relinquish its jurisdiction in favor of the state proceeding. *Pennsylvania* v. *Williams, supra.* Neither the liquidator nor the state has any personal, financial or pecuniary interest in the property in the custody of the federal court. Their only interest, like that of the Commission, is a public one, to maintain the state authority and to secure a liquidation in conformity to state policy. The "claim or defense" of the Commission founded upon this interest has a question of law in common with the main proceeding in the course of which any party or a creditor could challenge the propriety of the court's proceeding under Chapter XI.[10] The claim or defense is thus within the requirement of Rule 24 and intervention was properly allowed. The Commission was, therefore, a party aggrieved by the court's order refusing to dismiss and was entitled to appeal under §§ 24 and 25 of the Bankruptcy Act. See *Interstate Commerce Comm'n* v. *Oregon-Washington R. Co.,* *supra; Texas* v. *Anderson, Clayton & Co.,* 92 F. 2d 104.

[10] See Note 8 *supra.*

Section 208, applicable to proceedings under Chapter X, gives the Commission, upon filing its notice of appearance, "the right to be heard on all matters arising in such proceeding," but provides that it "may not appeal or file any petition for appeal in any such proceeding." As § 208 has no application to a proceeding under Chapter XI, it is unnecessary to consider the suggestion of the Commission that the limitation of the section is upon appeals to review questions arising in the proceeding from the performance by the Commission of its advisory functions and does not preclude it from appealing to challenge the exercise or non-exercise by the district court of its jurisdiction under Chapter X.

*Reversed.*

MR. JUSTICE DOUGLAS did not participate in the decision of this case.

MR. JUSTICE ROBERTS:

The Chandler Act[1] revised the Bankruptcy Act of 1898, as amended, and, in chapters X, XI, XII, XIII, and XIV, provided for corporate reorganizations, arrangements, real property arrangements, wage earners' plans, and Maritime Commission liens. These, with chapter VIII, authorizing agricultural compositions, chapter IX, dealing with indebtedness of local taxing agencies, chapter XV, added by Act of July 28, 1939, 53 Stat. 1134, and § 77, relating to reorganization of interstate railroads, in addition to the seven chapters of the original Act, constitute a comprehensive system for accommodating or liquidating indebtedness in the interest of both debtors and creditors. In chapters X to XIII, inclusive, added by the Chandler Act, the first section states: "The provisions of this chapter shall apply exclusively to proceedings under this chapter," thus evidencing the purpose to

---

[1] Act of June 22, 1938, 52 Stat. 840.

make each type of proceeding complete and exclusive of the others.

The proceeding instituted by the respondent, as is conceded, falls precisely within the terms of chapter XI, which deals with arrangements, and confers jurisdiction on the District Court to entertain the cause. But it is said that for the court to exercise that jurisdiction would be so contrary to the unexpressed purpose of Congress that the court should have refused to act. The decision assumes that if Congress had been interrogated as to its intent it would have expressed its will that an arrangement by one having such a financial structure as the respondent should not be permitted, and that, in order to prevent such a result, Congress, if it had been prescient, would have so stated. This seems to me to go beyond the construction of the Act as it is written and to amount to an amendment of it. I think that this is not admissible on the ground advanced that to hold otherwise would be to nullify rather than to effectuate the intent of Congress which is thought to pervade the statutory scheme.

Where the words are as plain and unambiguous as they are in chapter XI, recourse cannot be had to legislative history or other extraneous aids to construe them in some other sense, to add to, or to subtract from, what is written.[2]

But if resort to conventional aids to construction were admissible, they seem to me to confirm the statutory right of the respondent to proceed under chapter XI and to

[2] *Thompson* v. *United States*, 246 U. S. 547, 551; *Iselin* v. *United States*, 270 U. S. 245, 250; *United States* v. *Missouri Pacific R. Co.*, 278 U. S. 269, 277; *United States* v. *Shreveport Grain & Elevator Co.*, 287 U. S. 77, 83; *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85, 89; *Wallace* v. *Cutten*, 298 U. S. 229, 237; *Osaka Shosen Line* v. *United States*, 300 U. S. 98, 101; *Palmer* v. *Massachusetts*, 308 U. S. 79, 83.

preclude a holding that it should have proceeded under chapter X.

Under § 12 of the Bankruptcy Act of 1898 a corporation could propose a composition, but, as recourse to bankruptcy, whether for the purpose of liquidation or of proposing a composition, was dependent upon insolvency as defined in the statute rather than mere inability to pay debts as they accrued, a company finding itself in the latter condition could not avail itself of the bankruptcy jurisdiction but had to resort to an equity receivership.

In 1932 the Solicitor General, in a report to the President on the Bankruptcy Act and its administration,[3] pointed out the difficulties of proposing a composition in bankruptcy and suggested relief of the sort which was ultimately accorded by the adoption of § 77B.

By an Act of March 3, 1933,[4] there was added to the Act a provision which permitted "any person excepting a corporation," by petition, or by answer in an involuntary proceeding, to assert his insolvency or his inability to meet his debts as they accrued and his desire to effect a composition or an extension of time to pay his debts, and to adjust his indebtedness in that way. Thus an arrangement procedure was provided for individuals who were not insolvent in the bankruptcy sense. The same legislation also provided for agricultural compositions and extensions and for reorganizations of interstate railroads, but Congress did not, at that time, afford any further relief to corporations generally.

By the Act of June 7, 1934,[5] § 77B was added, permitting the reorganization of a corporation unable to meet its debts as they mature.

---

[3] Sen. Doc. 65, 72d Cong., 1st Sess.

[4] 47 Stat. 1467, § 74.

[5] 48 Stat. 911.

When, by the Chandler Act, Congress determined to revise and codify the entire bankruptcy system, it repealed § 12 and § 74, and, in lieu of them, adopted chapter XI, permitting arrangements of unsecured debts by individuals, partnerships, and corporations.[6] It thus clearly drew a distinction between a reorganization which affects various classes of creditors and stockholders and an arrangement which is merely an extension, adjustment, or accommodation of unsecured claims without disturbing either secured claims or stock interests. Where this simple form of accommodation would suffice, it was not intended that the corporation should have the privilege of a reorganization under chapter X, the successor of § 77B, for it is provided in chapter X (§ 146) that a petition shall not be deemed to be filed in good faith if adequate relief would be obtainable by a debtor's petition under the provisions of chapter XI and further (§ 147) that a petition filed under chapter X improperly, because adequate relief can be obtained under chapter XI, may be amended to comply with chapter XI and may be proceeded with as if originally filed under the latter. No such provision is found in chapter XI with respect to a case properly falling under chapter X. Obviously the right to proceed under chapter X was deemed a privilege of which a corporation could not avail itself if it could proceed under chapter XI.

The gravamen of petitioner's argument is that Congress intended the more detailed and cumbersome procedure of chapter X to apply wherever securities of the corporation were held by the public whereas chapter XI was intended to apply only in the case of individuals or corporations not having such securities outstanding.

The Act will be searched in vain for any hint of such a distinction. Small corporations are permitted to avail

---

[6] 11 U. S. C. §§ 706, 707.

themselves of chapter X if stockholders' or secured creditors' rights are to be affected; large corporations, under the very letter of chapter XI, may avail themselves of its provisions if all they desire to do is to extend or accommodate their unsecured indebtedness. The smallest corporation cannot come in under chapter XI if it desires what has been traditionally known as a reorganization. The largest corporation may proceed under chapter XI if it does not desire a reorganization.

The argument of the Commission comes merely to this: That foresight and providence on the part of Congress would have dictated a different line of demarcation between the two chapters and that what Congress should have said in chapter XI was that any debtor which did not have securities outstanding in the hands of the public might file a petition under chapter XI but that all others must file under chapter X.

The legislative history furnishes but the scantiest support for the argument. Indeed it bears quite as strongly against the Commission's contention as in its favor. The only item to which counsel is able to point is a committee report to the House [7] wherein it is said:

"Section 12 has been recast; such features of section 74 are incorporated as are deemed of value, and the combined sections are made chapter XI of the act under the title 'Arrangements' . . . The inclusion of corporations will permit a large number of the smaller companies such as are now seeking relief under section 77B but do not require the complex machinery of that section, to resort to the simpler and less expensive, though fully adequate, relief afforded by section 12."

It is undoubtedly true that many more small corporations will find chapter XI available than large ones but this does not at all support the Commission's claim that

---

[7] H. Rep. 1409, 75th Cong., 1st Sess., pp. 50–51.

the chapter was not intended to be available to companies having securities in the hands of the public.

On the other hand, testimony before the Congressional Committee was to the effect that large corporations would not come under chapter X if they were seeking merely to adjust their unsecured debts and should go, therefore, under chapter XI.[8]

One of the draftsmen of the Chandler Act, in a public exposition,[9] has said:

"What is the line of demarcation between proceedings under Chapter X and Chapter XI? Without attempting to go into detail, Chapter XI proceedings are intended for the reorganization of corporations with simple debt structures—reorganizations under which the interests of stockholders and secured creditors are not to be modified or readjusted. If secured claims or stock interests are to be changed without the consent of all of the stockholders and secured creditors, proceedings must be instituted under Chapter X."

That chapters X and XI were not written in ignorance of the distinction between corporations having publicly owned securities and those which have not, is shown by the fact that a special committee's report called attention to this difference and suggested that corporations not having such securities outstanding be permitted to go under the arrangements chapter whereas the first named should be required to file under what is now chapter X.[10] With this suggestion before it Congress adopted a different criterion.

When all is considered it is evident that little support for the Commission's argument can be gained from the

---

[8] Hearings, Subcommittee Senate Judiciary Committee on H. R. 8046, 75th Cong., 2d Sess., p. 75.

[9] Journal of the National Association of Referees in Bankruptcy (Jan. 1939), p. 72.

[10] Sen. Doc. 268, 74th Cong., 2d Sess., pp. 9–15.

legislative history. It is of no avail to urge that it would have been far better for Congress to adopt a different scheme and that the public interest which Congress had in mind in writing chapter X extends quite as much to a composition such as that proposed in the instant case as to the reorganizations envisaged in chapter X. These considerations may well be urged upon Congress in support of an amendment of the statute but they can have no weight with a court called upon to apply its plain language.

Equally unavailing is the argument that the present case must belong under chapter X since secured creditors and stockholders must be brought into the reckoning and because one of the requirements of § 366 is that the court must find the arrangement is "fair and equitable and feasible." It is said that this phrase is a term of art, given meaning by our decision in *Northern Pacific R. Co.* v. *Boyd,* 228 U. S. 482, and that, within that meaning, no fair, equitable, and feasible plan can here be accomplished under chapter XI although it could be under chapter X.

The short answer is that the phrase is used not only in chapter XI and chapter X but also in chapter XII respecting real property arrangements, and in chapter XIII respecting wage earners' plans.[11] Obviously the phrase as used in the Chandler Act must be given the connotation appropriate to the section in which it is used.

Another argument put forward is that, as courts of bankruptcy are courts of equity, they may, as a chancellor might in the case of a bill for receivership, find that the balance of convenience requires a refusal to exercise a jurisdiction possessed. I think this is a complete misapplication of the principle that a court of bankruptcy is a court of equity. That has been many times stated but never in connection with the right of a debtor to invoke the remedy provided by Congress in the bankruptcy laws.

---

[11] See §§ 472 and 656, 11 U. S. C. §§ 872, 1056.

The legislature has specified who is entitled to the relief provided by the statute and in what circumstances. The court has no power to refuse that relief on the ground that some other relief would better serve the purpose. What is meant by the statement that a court of bankruptcy is a court of equity is that its function is to make an equitable distribution of the estate among the creditors, but the principle has not been applied in the sense that the court may, in its better judgment, refuse to award the relief which Congress has accorded the bankrupt.

No stockholder or creditor, secured or unsecured, has attempted to raise the question of the District Court's jurisdiction under chapter XI. The Securities and Exchange Commission, although charged with no duty by the Act in connection with proceedings under chapter XI, has sought to intervene and to appeal from a decision by the District Court adverse to the Commission's views. Although the Commission may be permitted to appear in chapter X proceedings, it is expressly provided that it may not appeal from any decision.[12]   No analogous provision is found in chapter XI although that chapter does, in certain instances, grant interested parties the right to be heard.[13]

By general order the Rules of Civil Procedure are made applicable in bankruptcy so far as practicable. It is suggested that Rule 24 authorizes the Commission's intervention but a mere reading of the rule shows that neither intervention of right, nor permissive intervention, is available to the Commission in this case. The Commisson may not intervene as of right under the rule because no statute confers on it an unconditional right to intervene; the Commission has no interest which may be bound by a judgment in the action; and it cannot be

[12] § 208, 11 U. S. C. § 608.
[13] §§ 334 and 365, 11 U. S. C. §§ 734 and 765.

adversely affected by the court's decision. It is not entitled to permissive intervention because no statute confers a conditional right to intervene and because it has no claim or defense which will be affected by any decision of law or fact by the court. The cases in which bankruptcy courts have allowed creditors to raise questions of venue or of jurisdiction to adjudicate under the terms of the statute, where the proceeding would affect the creditors' financial interest, are inapposite, as are also equity receivership cases where an official intervenes in order to claim the right, as such official, to take over and administer the property in the possession of the court.

I am of the opinion that the judgment should be affirmed.

The CHIEF JUSTICE and MR. JUSTICE McREYNOLDS agree with this opinion.