270 F.2d 852
 PRIDE OF VIRGINIA POULTRY CORPORATION, Debtor, Appellant,
v.
ROCCO FEEDS, INCORPORATED, Rocco Feeds of West Virginia, Incorporated, East Point Turkeys, Incorporated, and Rockingham Milling Company, Incorporated, Appellees.
 No. 7932.
 United States Court of Appeals Fourth Circuit.
 Argued September 15, 1959.
 Decided October 5, 1959.
 
 Israel Steingold, Richmond, Va. (Steingold & Steingold, Richmond, Va., and Harry Blatt, Harrisonburg, Va., on brief), for appellant.
 George S. Aldhizer, II, Harrisonburg, Va. (Wharton, Aldhizer & Weaver, Harrisonburg, Va., on brief), for appellees.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.
 SOBELOFF, Chief Judge.
 
 
 1
 At issue here are the procedures followed by the Referee in connection with an Arrangement proposed under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.
 
 
 2
 The appellant, Pride of Virginia Poultry Corporation, a Virginia corporation engaged in the business of processing poultry, is, for all practical purposes, a "one-man corporation" operated by Samuel J. Winoker, who owns all of its stock except one share owned by his son, Lester G. Winoker. An involuntary petition in bankruptcy was filed against the Corporation on April 10, 1959, in the United States District Court for the Western District of Virginia. On April 16, 1959, appellant filed an Arrangement Petition pursuant to Ch. XI. The District Judge adjudicated appellant a bankrupt on April 27, referred the cause to the Referee, and ordered the Referee to convene the creditors and submit to them the Arrangement proposed by the debtor. The Referee then sent notices to creditors informing them of the first meeting, at which they could prove their claims, appoint a trustee, appoint a committee of creditors, and consider the proposed Plan of Arrangement, details of which were attached.
 
 
 3
 At the creditors' meeting, a majority in number voted in favor of the Plan, but their claims aggregated only $155,796.88. A minority, consisting of larger creditors, with claims amounting to $239,433.83, opposed the Plan. A chief ground of opposition voiced by opponents was that the Plan contemplated continued operation by the Winokers. Since Sec. 362 (1) of the Bankruptcy Act [11 U.S.C.A. § 762(1)] requires a majority of creditors both in number and amount to accept a Plan of Arrangement before it can be submitted to the Court for confirmation, the Plan failed to receive the legally requisite number of acceptances. The creditors proceeded to elect a trustee, who was instructed to have the assets appraised and liquidated.
 
 
 4
 Samuel J. Winoker, the principal stockholder of the Corporation, had offered a claim for $189,786.76; and Lester G. Winoker, the owner of a single share of stock, had offered a claim for $113,307.56. The Winokers contend that they were entitled to vote these claims in favor of the Plan, but this the Referee refused to permit. The correctness of this action of the Referee was contested below and is challenged in this Court.
 
 
 5
 The Winokers having personally guaranteed several debts of the Corporation, were contingent creditors for the respective amounts above stated. As to any amounts they might be called upon to pay on account of their secondary liability, they would be subrogated to the rights of the primary creditors. Of the $189,786.76 for which Samuel J. Winoker was secondarily liable, $84,390.05 was a debt owed the Small Business Administration, secured by a deed of trust on the real estate of the Corporation; $28,917.51 was a debt of the Corporation secured by a conditional sales contract on refrigeration equipment; $3,136.75 was a debt for equipment of the Corporation secured by a chattel mortgage; and the remaining $73,342.45 were unsecured debts of the Corporation which Samuel J. Winoker had guaranteed. The $113,307.56 for which Lester G. Winoker was liable as guarantor consisted of the identical debts his father had guaranteed, and these were secured, as above noted.[1]
 
 
 6
 The asserted reason for the Referee's disallowance of the Winokers' claims was that they were not "`contingent' claims, as contemplated by Section 307(1) of the Act," even though Sec. 307(1) of the Bankruptcy Act [11 U.S.C.A. § 707(1)] specifically includes those with unliquidated and contingent claims in the definition of creditors who may accept a plan.
 
 
 7
 As the Referee was about to announce that the Plan had not been accepted by the requisite amount of claims, the appellant tendered an amended Plan, which the Referee "allowed to be filed and considered." The Referee, however, did not submit the amended Plan to the creditors, but at once rejected it on the ground that it was "no more feasible than the original Plan." This action of the Referee is also challenged on this appeal.
 
 
 8
 The amended Plan did not differ appreciably from the original. Each provided for the prompt payment of claims having priorities and of claims not exceeding $250. In the original Plan, unsecured creditors with claims exceeding this sum were to be paid from corporate funds 5% upon confirmation of the Arrangement, and installments every six months until a total of 20% of the claim was paid. The remaining 80% was to be paid by preferred stock in the Corporation. In the amended Plan, the larger creditors could choose between two options. The first option was similar to the original Plan, except that 25% was to be paid from corporate funds in installments, and 75% by preferred stock. Under the other option, a creditor would receive a cash payment of $250 upon confirmation of the Plan, and the balance was to be paid by cash debentures, secured by the Corporation's assets, with 50% payable in five years and 50% in ten years.
 
 
 9
 In both the original and amended Plans, the Court was to retain a general jurisdiction over the Corporation until all cash payments had been made. In the original Plan, it was specified that the debtor would remain in full possession, control and custody of the business. In the amended Plan, the Corporation's charter was to be changed to provide for a Board of Directors of seven persons, four elected by the common stockholders (the Winokers) and three by the preferred stockholders (creditors). Therefore, in the amended Plan, the effective control of the Corporation would still be in the hands of the Winokers, and it was this feature particularly which had aroused the resistance of the larger creditors.
 
 
 10
 The District Judge affirmed the Referee's order, agreeing with the Referee's reasons for not allowing the contingent claims of the Winokers to be counted towards acceptance of the original and in refusing to submit the amended Plan to creditors. The District Judge advanced an additional reason why the Winokers' contingent claims could not be counted towards acceptance of the Plan: namely that Sec. 362 of the Bankruptcy Act [11 U.S.C.A. § 762] requires a Plan of Arrangement to be accepted by a majority in number and amount of creditors affected by the arrangement, and Sec. 308 [11 U.S.C.A. § 708] provides that a creditor is "affected" by an arrangement only if his interest is materially and adversely affected. The District Judge held that the interest of the Winokers was not adversely affected by the Arrangement.
 
 
 11
 I. Disallowance of the Winoker Claims.
 
 
 12
 We need not decide whether the claims of the Winokers were such "contingent" claims as may be counted towards acceptance of a Plan under Sec. 307(1) or whether the Winokers, to the extent of their unsecured interests, were adversely affected by it. Whatever the answer to these questions, the claims of the Winokers, as presented, were not, in our opinion, entitled to be voted for another reason, namely that they were in large part "secured" claims; and, as we shall show, only unsecured claims may vote on an Arrangement. The Winokers cannot complain of the result, because it is plain from the record that, of the unsecured claims, an insufficient amount voted approval.
 
 
 13
 Of the $189,789.76 for which Samuel J. Winoker was secondarily liable, and therefore a contingent creditor of the Corporation, $116,444.31 consisted of secured debts, and only $73,342.45 were unsecured. In the case of the $113,307.56 in debts for which Lester G. Winoker was secondarily liable, all were secured. Clearly, only unsecured creditors can be affected by a Ch. XI Arrangement Plan, and hence only unsecured claims may be considered in determining whether or not creditors in the requisite amount have accepted. Sec. 307(1) defines "creditors" as "holders of all unsecured debts", and Sec. 307(2) provides that "`debts' or `claims' shall include all unsecured debts, demands, or claims of whatever character * * *." (Emphasis supplied.)
 
 
 14
 Even if the very definitions of "creditors" and "claims" in Ch. XI did not make it clear that only unsecured creditors may vote on a Plan of Arrangement, it is settled by the cases that only claims of unsecured creditors may be "affected" by an arrangement, and Sec. 362 of the Act provides that only creditors affected by the plan may accept it. In Securities and Exchange Commission v. United States Realty & Improvement Co., 1940, 310 U.S. 434, 452, 60 S.Ct. 1044, 1051, 84 L.Ed. 1293, the Supreme Court said: "Under Chapter XI only the rights of unsecured creditors of the debtor may be arranged and this without alteration of the status of any other classes of security holders * * *." Following this authoritative statement, In re Camp Packing Company, D.C.N.D. N.Y.1956, 146 F.Supp. 935, held that only unsecured creditors can be affected by a Ch. XI Arrangement. Similarly, in In re Potts, D.C.E.D.Ky.1942, 47 F.Supp. 990, the Court held that since only unsecured claims could be "affected" by a Ch. XI Arrangement, a secured creditor could not accept or reject the Plan.
 
 
 15
 The guarantor of a secured claim is himself secured, for if he is called upon to pay a secured creditor, he succeeds to the rights against the security which the primary creditor had and stands in the shoes of the creditor whom he has paid.
 
 
 16
 Applying this principle to the present situation, if the $73,342.45 in unsecured debts of the Corporation, for which Samuel J. Winoker is secondarily liable, and to that extent a contingent creditor of the Corporation, were added to the $155,796.88 which was voted in favor of the Plan, there would still be only $229,139.33 of acceptances, while $239,433.83 voted to reject. Since the acceptances, in any event, would be insufficient in amount, the Plan necessarily fails.
 
 II. Rejection of Amended Plan Without Submission to Creditors.
 
 17
 Sec. 363 of the Bankruptcy Act [11 U.S.C.A. § 763] provides that:
 
 
 18
 "Alterations or modifications of an arrangement may be proposed in writing by a debtor, with leave of court, at any time before the arrangement is confirmed; * * *".
 
 
 19
 First, appellant argues that when the Referee stated that the amended Plan was "allowed to be filed and considered," he was in effect giving leave to propose the Plan to creditors, and thus he committed error in not allowing the Plan to be submitted to them. The appellant's argument, earnestly presented, would ascribe a false value to the Referee's words. Even when read literally, the words do not support appellant's contention. The Referee merely allowed the amended Plan to be filed, but did not give leave to propose the Plan to the creditors. And when account is taken of what the Referee said almost in the same breath, one is forced to the conclusion that the Referee meant merely that the amended Plan might be made part of the record. Quite evidently, the words upon which appellant relies were not spoken with any idea that leave was being granted for the new Plan to be proposed to the creditors.
 
 
 20
 Appellant next argues that when the Referee stated, as a ground for his rejection, "that it was no more feasible than the original Plan, which would in effect return the Corporation to Samuel J. Winoker for operation," the Referee violated Sec. 362 [11 U.S.C.A. § 762] and Sec. 366 [11 U.S.C.A. § 766], which provide that a determination of feasibility is to be made only after a plan has been accepted by the creditors and after a hearing. To look only to one sentence of the Referee's statement, ignoring the qualifications appearing from the context, is to miss the essence of his order. In substance he refused the necessary permission for the amended Plan to be proposed to creditors and gave as his reason that the new Plan had the same infirmities as the old, which had just been rejected. The mere mention of feasibility by way of explanation does not alter the nature of the ruling. We are dealing here, not with a refusal to allow creditors to pass upon an original proposal, but a refusal to resubmit its essential counterpart.
 
 
 21
 We cannot say that this was an unreasonable position for the Referee to take, or for the District Judge to affirm, in view of the similarity of the two Plans. Both left the old management in control, to operate with the available corporate cash at the risk of the creditors' equity without the addition of any outside capital. The criticism made by opponents of the original Plan on this score applies with equal force to the amended one. While there is nothing to indicate any lack of integrity or business competence in the Winokers and it seems to be agreed that depressed conditions in the industry account for the company's predicament, it is understandable if a creditor prefers to retrieve what he can of his claim without hazarding his remaining equity in further operations under the same management.
 
 
 22
 Leave to propose alterations or modifications of an arrangement under Sec. 363 lies in the discretion of the court. 8 Collier On Bankruptcy (14th ed.) Sec. 9.10. If an amended plan obviously fails to meet the creditors' major objection to the original plan, it cannot be called an abuse of discretion to deny leave to submit the amended plan.
 
 
 23
 For the above reasons, the District Judge's action in upholding the Referee's report is
 
 
 24
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 In addition to the $189,786.76 for which Winoker was a contingent creditor, he submitted a claim for $4,420.86, allegedly due him for gasoline and hauling. The Referee also disallowed this claim, on the ground that the corporate records showed a greater off-setting indebtedness due by Winoker
 Also, at the oral argument before us, the appellant alleged that there exists an additional debt of the Corporation which the Winokers have guaranteed for about $16,000, but, because of neglect, the Winokers presented no "contingent" claim to the Referee for this amount. None of the details concerning the nature of this claim have been revealed to us, and we could not in any event, hold the Referee in error in not considering a claim which was not made before the argument on appeal.