In the Matter of **POSI–SEAL INTERNA-TIONAL, INC.**, Debtor-Appellee,

v.

**Richard F. CHIPPERFIELD, Appellant.**

**No. 466, Docket 71–2093.**

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1972.

Decided March 15, 1972.

Bernard J. Virshup, New Haven, Conn. (Merriam, Virshup & Caplan, Milton I. Caplan, Geoffrey A. Hecht, New Haven, Conn., of counsel), for appellant.

Aaron Levy, Associate Director, Division of Corporate Regulation (G. Bradford Cook, Gen. Counsel, David Ferber, Sol., Paul Gonson, Asst. Gen. Counsel), S. E. C., Washington, D. C., amicus curiae.

Wender, Murase, White & Briger, New York City (Peter J. Gartland, Peter A. Dankin, New York City, of counsel), for Stanton C. Saunders, amicus curiae.

Reginald Leo Duff, New York City (Carro, Spanbock & Londin, New York City), for debtor-appellee.

Before SMITH, FEINBERG and MULLIGAN, Circuit Judges.

PER CURIAM:

This is an appeal from an order of Judge Robert C. Zampano of the United States District Court for the District of Connecticut which affirmed the denial by the Referee in Bankruptcy of appellant's objections to the confirmation of an arrangement under Chapter XI of the Bankruptcy Act §§ 301–399 (11 U. S.C. §§ 701–799) and which denied appellant's petition for review. The debt-

or-appellee is a publicly held Delaware corporation with a principal place of business in Connecticut. It had 4,874,174 shares of common stock outstanding held by 1700 stockholders, including 528,300 shares held by Richard F. Chipperfield, a former officer and director and the appellant herein. On August 24, 1970 the debtor filed a plan of arrangement under Chapter XI of the Bankruptcy Act. Insofar as relevant to this appeal the plan, in addition to allowing the payment of taxes and unsecured creditors other than debenture holders, provided for a reverse split of the outstanding common stock on a ten-to-one basis. The post-split shares were to be apportioned as follows: 25% to the debtor's stockholders of record, *pro rata*; 40% to the Bronson group which sponsored the plan and advanced $300,000 to the debtor; 25% to debenture holders in exchange for the debentures and 10% for miscellaneous purposes. It was also provided that the consent of a majority of the stockholders and debenture holders be a condition precedent to the confirmation of the plan. The appellant and another major stockholder, Harold Bass, initially objected to the Bronson Plan but finally agreed on November 4, 1970 to give irrevocable proxies which would easily assure requisite stockholder approval. At a hearing on November 4, 1970 the Referee found that there was majority stockholder approval, as well as the needed approval of a majority of creditors in number and amount. Chipperfield and Bass subsequently sought to disavow their adherence to the Bronson Plan and brought unsuccessful suits in the Southern District of New York to enjoin the voting of their stock in its favor, and in the District of Connecticut to enjoin the holding of the stockholders meeting. At the stockholder meeting on June 8, 1971 the stockholders by a substantial margin approved the Bronson Plan, the reverse split on a ten-to-one basis and an amendment to the certificate of incorporation, decreasing the authorized shares of common stock and

eliminating the authority to issue preferred stock. At the confirmation hearing, July 12, 29 and 30, 1971, the Referee found that Chipperfield and Bass were estopped from denying the binding effect of their agreement to give irrevocable proxies in favor of the plan because they did not object at the hearing before him on November 4, 1970, when he had been assured that their consent had been given. They also claimed that the proxy statement was misleading but did not pursue the point on argument. All other objections were rejected and the plan was confirmed on August 18, 1971.

One month later Chipperfield, pursuant to § 39(c) of the Bankruptcy Act (11 U.S.C. § 67(c)), filed a petition for a review of the confirmation order in the District Court of Connecticut. Bass, the largest stockholder of record, has withdrawn from the controversy and has since given an irrevocable proxy covering all of his shares to an individual who is committed to the plan. In addition to his initial objections appellant for the first time attacked the jurisdiction of the Referee and the District Court to proceed under Chapter XI of the Bankruptcy Act, because the plan or arrangement involved the "affectation" of stockholder rights. On October 1, 1971 Judge Zampano entered an order in which he fully adopted the Referee's findings and conclusions, overruled the jurisdictional contention and denied the petition for review.

We affirm.

This court has no difficulty in affirming the findings of the Referee on the unreported opinion of the court below but was concerned with the question as to whether or not the proceeding was properly brought under Chapter XI. For that reason we requested the Securities and Exchange Commission to provide a brief, *amicus curiae*, giving its opinion as to the subject matter jurisdiction of the court to confirm the plan of arrangement, and if the court did have jurisdiction, whether it had abused its discretion. The brief of the Securi-

ties and Exchange Commission, which is scholarly and most helpful to the court, supports the jurisdiction of the court below and found no error in the confirmation of the plan.

██ In view of our affirmation of the court below, we will assume that the stockholder appellant has standing on a petition for review to raise the objection that a proceeding under Chapter XI should have been under Chapter X. (*Cf.* Comstock v. Group of Institutional Investors, 335 U.S. 211, 226–227, 68 S. Ct. 1454, 92 L.Ed. 1911 (1948)). We think that it is significant, however, that the objection to jurisdiction was not raised until September, 1971, although the petition for relief under Chapter XI was filed in August, 1970. The debtor is now solvent. The Bronson Plan was supported by a substantial majority of stockholders which would not be changed by a new vote permitting appellant's shares to be voted against the plan in view of the change of heart by Bass, the record holder of 922,000 shares of stock of the debtor. We cannot, however, agree with appellee's demand for damages for delay and double costs. (28 U.S.C. § 1912; Fed.R.App.P. 38). We do not find that the appeal is frivolous within Oscar Gruss & Son v. Lumbermen's Mutual Casualty Co., 422 F.2d 1278, 1284 (2d Cir. 1970).

██ We reject the contention that the court below lacked jurisdiction to confirm the Chapter XI arrangement. In S. E. C. v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940) although the court found that Chapter X was more appropriate than Chapter XI, it did not deny the jurisdiction of the court below to proceed under Chapter XI. "[W]e find in neither chapter any definition or classification which would enable us to say that a corporation is small or large, its security holders few or many, or that

its securities are 'held by the public', so as to place the corporation exclusively within the jurisdiction of the court under one chapter rather than the other." *Id.* at 447, 60 S.Ct. at 1049. The question is one of propriety and not jurisdiction. It is vital here to note that, although Chapter X is normally appropriate when stockholders are compelled by a plan to surrender interests to creditors (S. E. C. v. American Trailer Rentals Co., 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed. 2d 510 (1965)), the reverse split of the debtor's stock and the distribution of a large part of it to third parties was, as found by the court below, a condition precedent to the consummation of the plan and not created by the terms of the arrangement. Confirmation of the plan was conditioned upon the successful consummation of a transaction pursuant to the state law of Delaware.[1]

██ In determining the propriety of the procedure of Chapter XI versus Chapter X, the primary concern is the protection of public investors. S. E. C. v. American Trailer Rentals Co., *supra*, at 614, 85 S.Ct. 513. In this case, we find no prejudice at all to public investors by the use of Chapter XI rather than Chapter X, and hence whatever presumption that might exist in favor of the latter procedure is dissipated. (See S. E. C. v. Canandaigua Enterprises Corp., 339 F.2d 14 (2d Cir. 1964)). In this case at the time the petition was filed it appears to be uncontested that the stock was absolutely valueless and that on liquidation, which was the debtor's only viable alternative, there was scant likelihood of any substantial dividend to creditors. The 25% stock equity was therefore a windfall to the stockholders achieved by acceptance of the plan. There was no evidence of any management wrongdoings—appellant Chipperfield and Bass had been ousted as officers and directors in September,

---

1. Thus In re May Oil Burner Corp., 38 F. Supp. 516 (D.Md.1941) strongly relied on by appellant is distinguished. There a Chapter XI procedure was invalidated where stockholder equity was substantially reduced, but stockholder approval, although by majority, was less than the two-thirds required by Maryland, the state of incorporation. (*Id.* at 519–520).

1969, and a caretaker management had been installed. While we realize that the court below did not have "open ended" discretion to determine between Chapter X and XI, the guiding principles of rehabilitation of the debtor and the interests of the public investors [2] have been served here.

We affirm.

---

2. The Securities and Exchange Commission brief pointed out that there was no showing that the debenture holders, who had some $2 million worth of claims against the debtor, were public investors. It assumed that they were "few in number and familiar with the operations of the debtor", SEC v. American Trailer Rentals Co., 379 U.S. 594, 614, 85 S.Ct. 513, 524, 13 L.Ed.2d 510 (1965). The "debenture" holders are unsecured subordinated promissory note holders with attached warrants to purchase the debtor's stock at par. No debenture holder has appeared in this action, but a committee of debenture holders held six formal meetings and approved the plan overwhelmingly. There is nothing in the record to indicate that the assumption of the SEC is inaccurate. The debenture holders were less than 60 in number and practically all were or became stockholders of the debtor.