## In re MAY OIL BURNER CORPORATION.

### No. 9575.

District Court, D. Maryland.

April 9, 1941.

Piper, Watkins & Avirett, James Piper, R. Dorsey Watkins, and J. Martin McDonough, all of Baltimore, Md., for debtor.

W. Russell Mules, of Baltimore, Md., for A. E. Duncan and other creditors.

Fisher & Fisher, Samuel J. Fisher and Bernard S. Meyer, all of Baltimore, Md., for A. J. Fleischmann.

COLEMAN, District Judge.

This is a proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. §§ 701–799, instituted by the May Oil Burner Corporation, a Maryland corporation having no secured creditors.

All of the requisite procedural steps required by Chapter XI have been complied with, leading up to the proposal of a so-called "arrangement" which has been accepted by all of the Debtor's unsecured creditors, there being no secured creditors, and has also been approved by the holders of more than a majority, 63%, of the stock of the Debtor issued and outstanding. Accordingly, application has been made to the Court to confirm the "arrangement" which, as the statute provides, the Court shall do if satisfied that (1) the provisions of this chapter have been complied with; (2) it is for the best interests of the creditors; (3) it is fair, equitable and feasible; (4) the debtor has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to the discharge of a bankrupt; and (5) the proposal and its acceptance are in good faith and have not been made or procured by any means, promises, or acts forbidden by this title. 11 U.S.C.A. § 766.

The Debtor company is authorized by its charter to issue 300,000 shares of stock, of which 50,000 shares of the par value of $10 each are preference A stock, 50,000 shares of the par value of $10 each are preference B stock, and 200,000 of the par value of $10 each are common stock. Of this total authorized issue, 95,635 shares of common stock are outstanding and in the hands of the public. While the assets of the Debtor company at a ·fair value have been found to be in excess of its liabilities, the Debtor, nevertheless, has been unable to pay its debts as they mature and therefore, has proposed the following arrangement which is the result of rather protracted efforts to adjust its affairs. This proceeding was originally instituted on February 7th, 1941, but was dismissed on March 3rd, 1941, after a hearing which resulted in no arrangement being proposed by the Debtor which was accepted by its creditors. However, the proceeding was reopened on March 7th, 1941, upon disclosure by the Debtor of a modified arrangement which had been accepted on behalf of all creditors and also approved by the holders of more than a majority of the stock of the Debtor issued and outstanding, the Debtor further representing that unless the proceeding were reopened, its business would be liquidated and that there would be no assets remaining after such liquidation for distribution to its stockholders.

The arrangement now before the Court is a relatively simple one, as follows: All of the Debtor's assets are to be transferred to a new company which shall also be a Maryland corporation, with an authorized capital stock of 500,000 shares of common stock of the par value of $1 a share, of which 365,635 shares only shall be issued and the same shall be transferred to the Debtor in consideration of the transfer of its assets. The new company shall assume all of the liabilities of the Debtor existing at the date of the transfer except the claims of noteholders and of trade creditors which latter the Debtor shall pay out of funds paid it by the new company, these trade creditors' claims aggregating $11,610.29. The Debtor shall deliver to the noteholders, the principal amount of whose notes is approximately $270,000, one share of the stock of the new company for each $1 principal amount of such notes and the new company shall also pay to these noteholders interest on their notes to the date of the delivery of the stock. Lastly, the arrangement expressly names the first board of directors.

While, as above stated, the proposed arrangement has been approved by the holders of more than a majority of the stock of the Debtor company issued and outstanding, it is opposed by one Albert J. Fleischmann, who has been opposed to the management and policies of the Debtor and who, together with certain other stockholders who have voted their stock with him, owns or controls more than one-third of the outstanding stock of the Debtor. Specifically, this stockholder's objections to the pro-

posed arrangement are as follows: (1) that it materially and adversely affects his rights as a stockholder; (2) that it is not such an arrangement as is within the provisions of Chapter XI because (a) it provides for sale and transfer of the assets of the Debtor to a new corporation, and (b) it affects stockholders' rights; and (3) such an arrangement if confirmed in a Chapter XI proceeding, would be a violation of the due process clause of the Federal Constitution. In 1939 this same stockholder sued, in the State Court, one of the Debtor's present and principal note creditors, together with the present president of the Debtor, for large sums on account of alleged fraud and mismanagement while officers and directors of the Debtor, but this suit was voluntarily dismissed in the course of trial.

We deem it necessary to consider only one of the above recited objections, namely, the second, that the proposed arrangement goes beyond the provisions of Chapter XI, because we believe that this objection is meritorious and that on this ground, entirely apart from any other considerations, this Court is without jurisdiction to entertain or to confirm the proposed arrangement, and that therefore, this proceeding must be dismissed.

Our reasons for this conclusion may be briefly stated. Chapter XI, forming part of the extensive amendments to the Bankruptcy Act embodied in the so-called Chandler Act approved June 22nd, 1938, has replaced Sections 12 and 74, of the old Bankruptcy Act, 11 U.S.C.A. §§ 30, 202, relating to compositions. It is not necessary to consider in any detail the reasons for this substitution. Suffice it to point out that Section 74 had been drafted presumably with a view to replacing Section 12. However, when Section 74 was enacted Section 12 was not repealed and thus the Bankruptcy Act offered alternative forms of relief which in respect to unsecured debts, were identical in objective. Section 12 provided in connection with a bankruptcy proceeding before or after an adjudication a simple procedure for the composition of the unsecured debts of a debtor whether an individual, partnership or corporation. Section 74 broadened the scope of composition proceedings by including the right to extend the time of payment of secured debts, by permitting the filing of an original petition for relief without the necessity of an accompanying bankruptcy proceeding and by extending the exclusive jurisdiction of the court over a debtor's property wherever located. On the other hand, however, it narrowed the availability of the proceeding by excluding therefrom corporate debtors, and by restricting the right to file a proposal in the case of a pending bankruptcy proceeding to an involuntary bankrupt before his adjudication. While Section 74 remedied what were considered some of the procedural deficiencies of Section 12, it was still believed by many not to be satisfactory. The provisions of Chapter XI are more comprehensive than those of Sections 12 and 74 of the old Act.

"Arrangement" is defined in Chapter XI as "any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, upon any terms; * * *." 11 U.S.C.A. § 706. It is clear from this definition and from the history of the legislation which culminated in the enactment of Chapter XI, that dealing in any way with stockholders' rights was not contemplated any more than was it contemplated that Chapter XI should affect the debtor's secured creditors. Nowhere throughout the very numerous provisions of Chapter XI do we find any language which may reasonably be said to oppose this conclusion. Furthermore, the Supreme Court leaves this question, we believe, no longer open to controversy. In Securities & Exchange Comm. v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, it was held that Chapter XI admits of an arrangement only with respect to unsecured creditors and without alteration of the relations of any class of security holders; and that it provides no means for an arrangement of unsecured indebtedness held by hundreds of creditors of a corporation having thousands of stockholders. The district court entertained the proceeding under Chapter XI and entered an order permitting the Securities and Exchange Commission to intervene. Thereupon, the Commission moved to vacate the district court's order approving the debtor's petition, to dismiss the proceeding under Chapter XI and to deny confirmation under the proposed arrangement. This motion, however, was denied by the district court and the cause was referred to a referee for further proceedings. From this action of the district court the Commission appealed, and the Circuit Court of Appeals reversed the

district court's order permitting the Commission to intervene and dismissed the latter's appeal, 2 Cir., 108 F.2d 794. Thereupon the Supreme Court granted certiorari.

In the course of its opinion, the Supreme Court said (310 U.S. at pages 452, 453, 60 S.Ct. at page 1051, 84 L.Ed. 1293): "A plan under Chapter X [11 U.S.C.A. § 501 et seq.] may affect one or more classes of debts or securities of the corporation to be reorganized, and a subsidiary of the debtor may be brought into such a proceeding and reorganized with the debtor. § 129. Under Chapter XI [11 U.S.C.A. § 701 et seq.] only the rights of unsecured creditors of the debtor may be arranged and this without alteration of the status of any other classes of security holders or of subsidiaries. Both chapters provide for confirmation of the plan or arrangement by the judge 'if satisfied that' it 'is fair and equitable and feasible' and if 'the proposal' of the plan or arrangement 'and its acceptance are in good faith', §§ 221, 366. 'Fair and equitable', taken from § 77B [11 U.S.C.A. § 207] and made the condition of confirmation under both Chapter X or Chapter XI are 'words of art' having a well understood meaning in reorganizations in equitable receiverships and under § 77B which is incorporated in the structure of both Chapters X and XI.

\* \* \* \* \*

"Since the sections under Chapter XI already considered admit of an 'arrangement' only with respect to unsecured creditors without alteration of the relations of any other class of security holders, and since it contemplates, as required by § 366, that the arrangement shall be fair and equitable within the meaning of the Boyd case, it is evident that Chapter XI gives no appropriate scope for an arrangement of an unsecured indebtedness held by some nine hundred individual creditors of a corporation having seven thousand stockholders. The hope of securing an arrangement which is fair and equitable and in the best interests of unsecured creditors, without some readjustment of the rights of stockholders such as may be had under Chapter X, but is precluded by Chapter XI, is at best but negligible and, if accomplished at all, must be without the aids to the protection of creditors and the public interest which are provided by Chapter X, and which would seem to be indispensable to a just determination whether the plan is fair and equitable."

We must conclude from this decision that any arrangement which affects stockholders, whether materially and adversely or not, cannot be entertained under Chapter XI. It is obvious that the rights of the objecting stockholder would be affected under the proposed arrangement. The Debtor would become a holding company, owning only 26% of the stock of the new company. Instead of the objecting stockholder's present right of negative control over corporate action by the Debtor, he would have power to exert such control over a company that had only a minority interest in the stock of the corporation which actually owned all the assets of the Debtor. In other respects also, the objecting stockholder's rights would be affected, namely, by indirectly taking away his pre-emptive stockholder's right to maintain his proportional interest as a stockholder and by reducing at least the book value of his equity in the assets of the Debtor, through the surrender of 74% of the stock of the new company to the Debtor's note creditors; and by taking away his right to vote in the first instance for directors in the new corporation, i. e., to share in its management.

It is contended on behalf of the Debtor that under the proposal to satisfy the note creditors by paying them in stock at par, the Debtor's directors are discharging a legal obligation of the Debtor and that no stockholder has any valid complaint if the debt is not discharged by payment in excess of its face amount; that is to say, that in order for the arrangement to affect adversely the rights of stockholders, it must be shown that it contemplates an overpayment to creditors. However, the determining question is whether stockholders' rights are affected at all; not whether they are adversely affected.

The aforegoing is true independently of any provisions in the Maryland corporation laws. Since it is a fact, however, as the objecting stockholder also contends, that the proposed arrangement would accomplish without his consent what could only be accomplished with his consent under the Maryland law, clearly his rights are affected in this respect also. Under Maryland law, a sale and transfer of all of the assets of a corporation can only be made when two-thirds of the holders of the out-

standing stock of the corporation consent thereto, unless the corporation's charter permits such action by less than a two-thirds vote, which the present Debtor's charter does not do. Dissenting stockholders have the right to demand and receive the fair value of their stock as fixed by an appraisal. Maryland Code, Art. 23, Sec. 38.

We find in Chapter XI no authorization for the sale of all of the Debtor's assets to another corporation without compliance with the statutory requirements. This is confirmed by the fact that while paragraph (10) of Section 216 of Chapter X, 11 U.S.C.A. § 616(10), provides that a plan of reorganization under that Chapter shall afford adequate means for the execution of the plan which may include among other things stated in this paragraph, the sale or transfer of all or any part of the Debtor's property, no such provision is contained in Chapter XI. Further analysis of Chapter XI and a comparison of its various provisions with those contained in other parts of the Bankruptcy Act, would seem entirely superfluous in view of the Supreme Court's opinion in the Realty Company case, supra.

Finally, we feel it should be added parenthetically that had this proceeding originally been brought under Chapter X, or if Chapter X should later be resorted to, and if under that Chapter the matter progressed as it has done in the present proceeding, we would be disposed to confirm the arrangement or plan because the overwhelming testimony is that it is fair and equitable to all concerned, both stockholders and creditors. Under Section 146(2) of Chapter X, 11 U.S.C.A. § 546(2), a petition may not be filed under that Chapter unless the Court is satisfied that "adequate relief" would not be obtainable under Chapter XI. While for the reasons given the present proceeding must be dismissed, and while, as just stated, the proposed arrangement or plan if submitted under Chapter X would seem to warrant confirmation, we cannot be unmindful of the more protracted procedural steps and the seemingly unnecessary expense and delay involved in the Debtor accomplishing the desired purpose under Chapter X. Accordingly, it is hoped that an agreement may be reached out of court by resort to arbitration or otherwise, and thus in the fairest, most equitable and feasible way, avoid liquidation and insure continuation of the company's business under an arrangement such as has been proposed.