In re NATIONAL FURNITURE COM-
PANY, Inc., Debtor.
No. 2126.

United States District Court
W. D. Arkansas,
Fort Smith Division.
June 8, 1964.

Garner & Parker, Fort Smith, Ark., for debtor.

Charles M. Conway, U. S. Atty., Fort Smith, Ark., for petitioner.

JOHN E. MILLER, Chief Judge.

This is a review of an order of the Referee in Bankruptcy entered April 2, 1964, in this proceeding confirming an arrangement under Chapter XI of the Bankruptcy Act, Sec. 701 et seq., Title 11 U.S.C.

The United States, for and on behalf of the Small Business Administration, filed its petition April 10, 1964, to review the order of the Referee in Bankruptcy of April 2, 1964. The petitioner alleged that the Referee erred in finding that the SBA does not have a priority status with respect to a secured claim filed on its behalf prior to the confirmation of a plan of arrangement whereby the debtor shall fully discharge its unsecured debts. Specifically the petitioner alleged:

"1. Your petitioner is aggrieved by the order herein of Arnold M. Adams, referee in bankruptcy, dated April 2, 1964, a copy of which order is annexed hereto, marked Exhibit A, and made a part hereof.

"2. The referee erred in respect to said order, in finding that the Small Business Administration does not have a priority status.

"3. The referee erred in respect to said order in confirming a plan of arrangement without fixing a time within which the debtor must make a deposit to pay all debts which have a priority, including specifically the indebtedness due to the Small Business Administration as evidenced by its Proof of Claim. In this connection, petitioner asserts the indebtedness due to Small Business Administration is entitled to priority under the provisions of Section 337(2) and Section 64 of the Bankruptcy Act, which statutes are further cited as Section 737 and Section 104, Title 11, U.S.C., and, Section 191, Title 31, U.S.C., and that the statutory requirement for a deposit to pay this indebtedness has not been waived in writing or otherwise.

"4. The referee erred in respect to said order in finding that the

Small Business Administration is a secured creditor. In this connection, petitioner asserts that the evidence adduced at the hearing on April 2, 1964, on which the aforesaid order was entered, clearly reflects that any security held by the Small Business Administration could be reasonably valued at only a small portion of its indebtedness and that the Small Business Administration is unsecured as to the balance. Further, in this connection, petitioner asserts that the statutory requirement for the deposit to pay priority debts, not waived in writing, is in no way affected or mitigated against by the fact of whether or not a priority creditor is or is not secured."

The Referee in his certificate filed April 16, 1964, stated that this is a Chapter XI proceeding, in which Warren O. Kimbrough, attorney, was appointed receiver February 18, 1964, and instructed to do all things necessary to see that the assets and inventory of the debtor were not substantially depleted. After the filing of the statement of affairs and list of creditors, etc., the first meeting of creditors was held April 2, 1964, after notice to all creditors. At said meeting 23 common creditors had returned claims in addition to the SBA, which filed a claim 14, styled "Proof of Secured and Priority Claim of the United States of America." By this claim the SBA contended that the debtor owed it the sum of $18,810.39, plus interest from February 26, 1964, at the rate of 5 percent per annum, with a balance on May 11, 1962, of $25,000.00.

The SBA asserted that its claim was secured and entitled to a priority. Attached to the claim was a photostatic copy of a note and security agreement, granting a security interest to SBA in all machinery, equipment, furniture and fixtures now owned or thereafter acquired by the debtor. In addition to the foregoing security, the instrument contained individual guarantor signatures of Leslie Bryant, Don Tyson and Hal Cochran. The assets and liabilities of the debtor, as contained in the Referee's certificate and as set out in and attached to the brief of the petitioner, United States, are as follows:

### ASSETS

| | | |
|---|---|---|
| Real Estate | $ | None |
| Cash on hand | | 50.00 |
| Negotiable & Non-negotiable instruments | | None |
| Inventory | | 22,000.00 |
| Autos & Trucks (mtged to SBA) | | 2,000.00 |
| Machinery, fixtures and tools | | 500.00 |
| Accounts receivable | | 14,000.00 |
| Deposits | | 100.00 |
| | | $38,650.00 |

### LIABILITIES

| | | |
|---|---|---|
| Wages | $ | None |
| Taxes due United States | | 1,000.00 |
| Taxes due State of Arkansas | | 450.00 |
| Taxes due Counties, etc. | | 220.00 |
| Secured claims (Small Business Administration) | | 19,000.00 |
| Unsecured claims | | 32,262.94 |
| | | $52,932.94 |

The 23 unsecured common creditors accepted the proposed arrangement with no negative votes. The court in its certificate stated that, after examining the debtor and finding the arrangement feasible, it confirmed it, conditioned upon the debtor depositing with the distributing agent the sum required to pay all priority debts, which were stated to be $1,590.13, viz: $322.63 to Truss Russell, Clerk, for Referee's salary and expense fund; $400.00 to Warren O. Kimbrough, receiver; $675.17 to Internal Revenue Service; and $192.33 to the Tax Collector of Sebastian County, Arkansas.

The certificate further stated that, after the court indicated its intention to confirm the proposed arrangement, that Mr. Bailey F. Rankin, Acting Assistant Regional Counsel of SBA, objected to the proposed arrangement, stating that the SBA held a lien on the assets of the business in the sum of $18,810.39, plus interest, and insisted that the SBA was a priority creditor. Mr. Rankin demanded

that the sum of $18,810.39, plus interest, be added to the deposit required by the court of $1,591.13, or a total of $20,400.52, and that this sum was required as a condition precedent to the confirmation of the arrangement.

The petitioner, United States, thus contends that the order confirming the proposed arrangement without requiring deposit of the entire debt owed to the SBA was erroneous because of its priority under Title 31 U.S.C. § 191, and Title 11 U.S.C. § 104.

As the court views the record, the issue presented is: Must the secured or lien debt owed to SBA, an agency of the United States, be paid in full by a deposit under Section 337(2) of the Bankruptcy Act as a condition precedent to the confirmation of this arrangement, accepted by all unsecured creditors, whereby the debtor seeks to discharge in full the debts owed unsecured creditors in Chapter XI proceeding?

■ At the outset it should be noted that the general rule is that the SBA is a government agency having a priority status under the general priority section of the Bankruptcy Act, Title 11 U.S.C. § 104. As stated in Small Business Adm'n v. McClellan, (1960) 364 U.S. 446, at page 447, 81 S.Ct. 191, at page 193, 5 L.Ed.2d 200:

"The basic question this case presents is whether, when the Administration has joined a private bank in a loan and the borrower becomes a bankrupt, the Administration's interest in the unpaid balance of the loan is entitled to the priority provided for 'debts due to the United States' in R.S. § 3466 and § 64 of the Bankruptcy Act,[5] even though

"5. R.S. § 3466, 31 U.S.C. § 191, 31 U.S.C.A. § 191, establishes a general priority for debts due to the United States. Section 64 of the Bankruptcy Act, as amended, 11 U.S.C. § 104, 11 U.S.C.A. § 104, provides that in bankruptcy cases the priority so established should come fifth in the order of preferred creditors.

the Administration has agreed to share any money collected on the loan with the private bank."

At page 450 of 364 U.S., at page 195 of 81 S.Ct., the court stated:

"As was said there of the Farm Credit Administration, the Small Business Administration is 'an integral part of the governmental mechanism' created to accomplish what Congress deemed to be of national importance. And it, like the Farm Credit Administration, is entitled to the priority of the United States in collecting loans made by it out of government funds."

■ It seems clear that the congressional intent, as evidenced by Chapter XI of the Bankruptcy Act, is to provide for an efficient and orderly method by which the claims of unsecured or common creditors of a debtor might be satisfied without resort to general bankruptcy. Chapter XI proceedings, as stated in Securities and Exchange Comm. v. United States Realty & Imp. Co., (1940) 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293, are concerned solely with the claims of unsecured or common creditors. To the same effect, see 8 Collier on Bankruptcy, Sec. 337(2), and subsections, which emphasize that the term "creditor," as used in Chapter XI proceedings, relates to unsecured creditors. The Bankruptcy Act itself, in Sec. 307, 11 U.S.C. § 707, states with respect to Chapter XI arrangements that "(1) 'creditors' shall include the holders of all *unsecured* debts, demands, or claims of whatever character against a debtor, whether or not provable as debts under section 103 of this title and whether liquidated or unliquidated, fixed or contingent; and (2) 'debts' or 'claims' which include all *unsecured* debts, demands, or claims of whatever character against a debtor, whether or not provable as debts under section 103 of this title and whether liquidated or unliquidated, fixed or contingent."

In Vol. 8B, C.J.S. Bankruptcy, §§ 562 through 580, and §§ 771 and 785, it is

stated that Chapter XI proceedings apply to and affect only unsecured debts and claims. To the same effect, 8 Collier on Bankruptcy at page 682 states: "The word 'creditors,' as used in the requirement of Sec. 337(2) that the debtor deposit the consideration, if any, to be distributed to creditors, means *unsecured* creditors * * *."

In Pride of Virginia Poultry Corp. v. Rocco Feeds, Inc. (4 Cir. 1959), 270 F. 2d 852, the court stated beginning at page 855:

"Clearly, only unsecured creditors can be affected by a Ch. XI Arrangement Plan, and hence only unsecured claims may be considered in determining whether or not creditors in the requisite amount have accepted. Sec. 307(1) defines 'creditors' as 'holders of all *unsecured* debts', and Sec. 307(2) provides that ' "debts" or "claims" shall include all *unsecured* debts, demands, or claims of whatever character * * *.' (Emphasis supplied.)

"Even if the very definitions of 'creditors' and 'claims' in Ch. XI did not make it clear that only unsecured creditors may vote on a Plan of Arrangement, it is settled by the cases that only claims of unsecured creditors may be 'affected' by an arrangement, and Sec. 362 of the Act provides that only creditors affected by the plan may accept it. In Securities and Exchange Commission v. United States Realty & Improvement Co., 1940, 310 U.S. 434, 452, 60 S.Ct. 1044, 1051, 84 L.Ed. 1293, the Supreme Court said: 'Under Chapter XI only the rights of unsecured creditors of the *debtor* may be arranged and this without alteration of the status of any other classes of security holders * * *.' Following this authoritative statement, In re Camp Packing Company, D.C. N.D.N.Y.1956, 146 F.Supp. 935, held that only unsecured creditors can be affected by a Ch. XI Arrangement. Similarly, in In re Potts, D.C.E.D. Ky.1942, 47 F.Supp. 990, the Court

held that since only unsecured claims could be 'affected' by a Ch. XI Arrangement, a secured creditor could not accept or reject the Plan."

■ To attack a proposed arrangement, a "creditor" must demonstrate that he is in a class which will be affected to contest the action of the Referee in confirming a proposed arrangement. To be affected a creditor must have a claim which can be dealt with in a Ch. XI proceeding. As heretofore stated, Ch. XI proceedings only deal with claims or debts of unsecured creditors. The SBA in the instant case, in its claim filed prior to the confirmation of the proposed arrangement, asserted that its claim was a secured one.

In 8 Collier on Bankruptcy, Sec. 306, para. 2.07(3), at page 90:

"The debts which may be settled, satisfied or extended by an arrangement are limited to 'unsecured debts' by the definition of arrangement in Sec. 306(1). Section 356, which prescribes the mandatory provisions of an arrangement, requires that it modify or alter the rights of 'unsecured creditors' generally or of some class of them. Section 357(1), which permits an arrangement to treat debts on a parity or to divide the debts into classes and to treat the classes in different ways or upon different terms, is also confined to 'unsecured debts.' No provision of the Act permits an arrangement proposed under Chapter XI to deal with the rights of secured creditors or with the rights of stockholders. Hence an arrangement under Chapter XI may provide for unsecured creditors only."

■ The definition of the word "creditor" is determined by which chapter of the Bankruptcy Act is being applied. With respect to the deposit required in Chapter XI proceedings, there can be no doubt that the word "creditor" is narrowly defined to include only unsecured creditors, as stated in 8 Collier on Bank-

ruptcy, Sec. 337(2), para. 5.32(5), at page 682:

"The word 'creditors,' as used in the requirement of Sec. 337(2) that the debtor deposit the consideration, if any, to be distributed to creditors, means *unsecured* creditors. That is because an arrangement may provide for the settlement, satisfaction, or extension of unsecured debts, but cannot deal with secured debts."

■ It is true, as asserted in the brief of petitioner, United States, that claims of the United States are given a priority in general bankruptcy proceedings under Sec. 64, sub. a(5); however, being a secured creditor precludes its participation in Chapter XI arrangement proceedings.

■■ It should be noted in the instant case that the debtor has not been adjudicated a bankrupt, nor is it alleged the debtor has committed an act of bankruptcy, and thus the United States cannot assert a claim under Title 31 U.S.C. § 191. As stated in United States v. Schroeder (S.D.Iowa 1962), 204 F.Supp. 199, at page 201:

"The plaintiff contends that since the defendants Schroeders are insolvent, it is entitled to the benefit of section 3466 of the Revised Statutes, title 31 U.S.C.A. § 191, commonly known as the Priority Statute, which provides:

" 'Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed.'

Although the Priority Statute appears to apply 'whenever any person indebted to the United States is insolvent,' such is not the case. It is applicable only in the four instances specifically named: (1) the decedent's estate; (2) the voluntary assignment; (3) the attachment of the estate of an absconding, concealed, or absent debtor; (4) the commission of an act of bankruptcy. Considering this question in United States v. Oklahoma, 1923, 261 U.S. 253, 259, 260, 43 S.Ct. 295, 67 L. Ed. 638, the Court stated:

" 'The claim of the United States to the asserted priority rests exclusively upon the statute. * * * It establishes priority which is limited to the particular state of things specified. The meaning of the word "insolvent" used in the act and of the insolvency therein referred to is limited by the language to cases where "a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment", etc. Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part. (citing cases)' "

Also, see W. T. Jones & Co. v. Foodco Realty Inc. (4 Cir. 1963), 318 F.2d 881.

■■ Under General Order 47, Title 11 U.S.C.A. page 115, the reviewing court is bound to accept the findings of fact of the Referee "unless clearly erroneous." But the presumption of the correctness of the Referee's findings of fact is not extended by General Order 47 to conclusions of law. See Walker v. Commercial National Bank of Little Rock, Ark. (8 Cir. 1954), 217 F.2d 677; In

re Hot Springs Broadcasting, Inc. (W. D.Ark.1962), 210 F.Supp. 533. However, the court is of the opinion that the Referee's conclusions of law are not erroneous and that his findings of fact are supported by substantial evidence. Therefore, the findings of fact and conclusions of law of the Referee are confirmed and adopted in toto, and the petition for review should be dismissed.

An order is being entered today dismissing the petition for review, and confirming and adopting the Referee's findings of fact and conclusions of law.