[Civ. No. 520. Fifth Dist. July 16, 1965.]

SAN DIEGO WHOLESALE CREDIT MEN'S ASSOCIA-
TION, Plaintiff and Respondent, v. NORRIS R. BART-
LETT, Defendant and Appellant.

Edgar A. McNulty for Defendant and Appellant.

Orfield, Thompson, Bunker & Sullivan and Robert G. Sullivan for Plaintiff and Respondent.

STONE, J.—Defendant appeals from a judgment on an agreement to purchase shares of preferred stock.

As the result of financial difficulties, El Nadadero, Inc., a corporation, filed a petition under chapter XI[1] of the Bankruptcy Act and pursuant thereto listed its creditors and submitted to the referee in bankruptcy a plan for settling their claims. One part of the plan, entitled "Arrangement With its Unsecured Creditors,"[2] proposed that debtor El Nadadero issue preferred stock to the unsecured creditors in satisfaction of their claims.

Defendant and Glasford each owned one-third of the shares of common stock of El Nadadero. The owner of the remaining one-third of the common stock was also a secured creditor of the corporation. He was apparently content to rely on his first lien which covered nearly all of the corporation's real and personal property, while defendant and Glasford, with no lien, wished to have the corporation continue doing business under chapter XI.

Plaintiff, San Diego Wholesale Credit Men's Association, held assignments of claims from some 57 general creditors. Its executive secretary advised defendant and Glasford that unless they each agreed to purchase one-half of the preferred stock to be issued to it, plaintiff would refuse to approve the "arrangement" and force El Nadadero into bankruptcy. Defendant and Glasford then each signed an agreement prepared by plaintiff's attorney, providing in material part that: "In consideration of first party's acceptance of the Chapter XI plan now pending before the Federal District Court on behalf of its assignor claimants, second party hereby agrees to purchase from first party, at par, one-half of such shares of preferred stock received by first party in exchange for the claims of the creditors assignors of the first party."

---

[1] "Chapter XI provides a summary procedure by which a debtor may secure judicial confirmation of an 'arrangement' of his unsecured debts. . . . The debtor files his original voluntary petition for an arrangement in such a court as would have jurisdiction of a petition in ordinary bankruptcy and must file with the petition the proposed arrangement." (*Securities & Exchange Com.* v. *United States Realty & Improvement Co.* (1940) 310 U.S. 434, 446 [60 S.Ct. 1044, 84 L.Ed. 1293].) (See Title 11 U.S.C.A §§ 722, 723.)

[2] An arrangement is defined as "any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, . . ." (Title 11 U.S.C.A. § 706(1).)

The trial court held the agreements valid and entered judgment against defendant and Glasford. Defendant appeals, contending, first, that the agreement violates the Bankruptcy Act, chapter XI in particular, in that plaintiff by means of the agreement obtained a preference over all other general creditors.[3]

Defendant appears to be on firm ground, as in *In re Lawrence Products Co., Inc.*, 211 F.Supp. 301, the court upheld an order of the referee in bankruptcy enjoining the enforcement of an agreement giving a preference to a general creditor under circumstances quite similar to those surrounding the execution of the agreement before us. In *Lawrence* the corporation had filed a petition in the bankruptcy court under chapter XI, as El Nadadero did here, and the general creditors each agreed to accept 10 percent of his original debt in full settlement. In our case plaintiff agreed to take preferred stock, as did the other general creditors. In *Lawrence*, as the price for agreeing to the arrangement under chapter XI, the creditor extracted from "the two principal officers of the corporation" a collateral agreement in the form of a promissory note, to pay its unsecured claim in full. Here, the creditor, by threatening to withhold consent to the proposed "arrangement" under chapter XI and force El Nadadero into bankruptcy, induced the president and the secretary to agree to buy the preferred stock that plaintiff would receive under the arrangement in the bankruptcy court. In neither *Lawrence* nor in our case was the collateral agreement presented to the bankruptcy referee for approval nor made a part of the chapter XI proceeding.

██ Plaintiff denies any wrongdoing, asserting that by circular letter it advised the general creditors of its agreement with two responsible persons for the purchase of all preferred stock issued to plaintiff under the "arrangement," and that any general creditor could assign his claim to plaintiff and take advantage of the agreement for a 10 percent commission.

However, plaintiff failed to notify the referee in bank-

---

[3]No arrangement may be consummated without an affirmative vote of a majority in both number and amount, of all creditors whose claims have been proved and allowed (Title 11 U.S.C.A. § 762), save where there is unanimous approval of the arrangement in writing, in which case the claims need not be proved prior to confirmation of the plan. (Title 11 U.S.C.A. § 761.)

ruptcy of the agreements and did not file them with the bankruptcy court. Plaintiff also limited participation to those creditors who assigned claims to it and paid a 10 per cent commission. All this was done by plaintiff outside the purview of the bankruptcy court. Once a debtor files in bankruptcy under chapter XI, his creditors and their rights are subject to the jurisdiction of the referee in bankruptcy until the proceedings are terminated. In *Lawrence* the court said, at page 305: ''The whole purpose of the Bankruptcy Act and of Chapter XI is to see that all creditors have their interest fully protected by the Court and the Court, as before stated, has a duty to see that no side or outside agreements or arrangements are made out of the knowledge of the Court and the other creditors. If this were not true, it would be impossible for the Court to control a creditor situation in a Chapter XI proceeding if any listed creditor were to be allowed to use any method at his disposal to persuade or compel a debtor or bankrupt to pay him in full or to give him any preferential treatment over the other creditors. This would create an intolerable and unconscionable situation.''

Next, defendant contends that plaintiff secured its preference by economic coercion focused upon the officers and principal stockholders of the debtor corporation at a time when the corporation was under the jurisdiction of the federal bankruptcy court. The upshot of this argument is that this coercion violates the spirit of a chapter XI proceeding, as expressed in *In re National Furniture Co., Inc.*, 230 F.Supp. 130, 133: ''. . . the congressional intent, as evidenced by Chapter XI of the Bankruptcy Act, is to provide for an efficient and orderly method by which the claims of unsecured or common creditors of a debtor might be satisfied without resort to general bankruptcy.''

■ A debtor, whether a sole proprietor, a partner or a principal sotckholder of an insolvent corporation is in a pregnable position because he must induce a majority of general creditors to agree to a plan of arrangement for payment under chapter XI, to avoid the disastrous results of outright bankruptcy. Thus, when a creditor exerts pressure upon the principal stockholders of a debtor corporation he not only circumvents the bankruptcy court but he defeats the purpose of the statute.

The principles discussed above, which plaintiff violated, are inherent in the Bankruptcy Act. Additionally, Congress

has condemned practices by which advantage is taken of debtors who are proceeding in bankruptcy. Title 18, chapter IX, section 152, United States Code Annotated, defines as criminal acts the following: "Whoever knowingly and fraudulently gives, offers, receives or attempts to obtain any money or property, remuneration, compensation, reward, advantage, or promise thereof, for acting or forbearing to act in any bankruptcy proceeding; . . ."

The foregoing statute as well as the Bankruptcy Act clearly reflect a legislative intent to prevent a creditor from taking unconscionable advantage of an embarrassed debtor by threatening to force him out of a chapter XI proceeding and into bankruptcy.

Although plaintiff does not press the argument, technically the corporation was the debtor under the "arrangement." Nevertheless defendant and his fellow stockholder who was a defendant in a companion action, each owned one-third of the common stock of the corporation. The owner of the other one-third of the common stock, from all that can be gathered from the record, wanted to see the corporation plunged into bankruptcy rather than revitalized under chapter XI. He held a first lien against all the assets of the corporation, both real and personal. According to the testimony of plaintiff's executive secretary, this stockholder in all likelihood would have gained exclusive ownership of all the corporation property had it been forced out of chapter XI procedure and into conventional bankruptcy. The importance of this circumstance is that the two signers of the collateral agreement were the only stockholders vitally interested in seeing the corporation weather its financial crisis. Their personal interests were identified with the interests of the corporate debtor. The court may look behind the corporate veil in weighing the effect of the agreement and the circumstances surrounding its execution, just as plaintiff's executive secretary did in giving defendant an ultimatum to either execute the agreement assuming personal liability for the corporate debt or see the corporation forced into bankruptcy.

The facts of *Lawrence, supra,* are apposite to our case in that the signers of the collateral agreement guaranteeing payment in full to a general creditor were the two principal officers of the debtor corporation and were its principal stockholders. Nevertheless, in *Lawrence* the creditor was enjoined from enforcing the collateral agreement.

Defendants makes a number of other contentions which we need not discuss in view of our conclusion that the collateral agreement at bar is in violation of chapter XI of the Bankruptcy Act and unenforceable.

The judgment is reversed.

Conley, P. J., and Brown (R. M.), J., concurred.

A petition for a rehearing was denied August 12, 1965, and respondent's petition for a hearing by the Supreme Court was denied September 8, 1965.