**In the Matter of AMERICAN GUAR-ANTY CORPORATION, Debtor.**

**No. 63–17.**

United States District Court
D. Rhode Island.
Sept. 9, 1965.

Richard L. Veron, New York City, for Securities and Exchange Commission.

Alfred B. Stapleton, Providence, R. I., for debtor corporation.

Frederick G. Fisher, Jr., John Cancian, of Hale & Dorr, Bingham, Dana & Gould, Marcien Jenckes, Walter N. Kernan, of Hill & Barlow, Boston, Mass., S. Everett Wilkins, Providence, R. I., for creditors.

Andrew P. Quinn, Aram A. Arabian, Providence, R. I., for certain stockholders.

DAY, District Judge.

This matter is again before me upon the motion of the Securities and Exchange Commission (hereinafter called SEC) to dismiss the petition of American Guaranty Corporation (hereinafter called the debtor) for an arrangement under Chapter XI of the Bankruptcy Act, or, in the alternative, to dismiss unless said petition is amended in such a way as to transfer to proceedings under Chapter X of said Act. 11 U.S.C.A. § 728. Said motion was denied by me on September 11, 1963. In the Matter of American Guaranty Corporation, Debtor, 1963, D.C.R.I., 221 F.Supp. 961.

SEC appealed from the denial of its motion. Arguments on the appeal were heard by the Court of Appeals for the First Circuit at its December session 1963, but before its opinion had been prepared, the Supreme Court of the United States, on March 23, 1964, granted certiorari, 376 U.S. 948, 84 S.Ct. 971, 11 L.Ed.2d 969 in Securities and Exchange Commission v. American Trailer Rentals Co., 1963, 10 Cir., 325 F.2d 47, and the Court of Appeals withheld its opinion awaiting the decision of the Supreme Court. On January 18, 1965, the Supreme Court decided the American Trailer Rentals Co. case, 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510, and on February 16, 1965, SEC moved for a remand to this Court for reconsideration on the ground that subsequent to September 1, 1963, "there have been 'significant' factual developments 'bearing on the question presented on appeal'."

Thereafter, on March 23, 1965, the Court of Appeals issued its opinion, Securities and Exchange Commission v. Burton, Receiver et al, 1 Cir., 342 F.2d 783, granting the motion to remand to this Court for reconsideration and directing me to review "the factual situation

as it is now in the light of the criteria for the exercise of discretion as developed by the [Supreme] Court in SEC v. American Trailer Rentals Co., supra."

In its opinion the Court of Appeals said at page 785:

"In the light of American Trailer Rentals we think the court below may have misconstrued the criteria for exercising its discretionary power under the cases upon which it relied, SEC v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940), and General Stores Corp. v. Shlensky, 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550 (1956), principally by considering the orderliness of the plan of arrangement and the economy of Chapter XI proceedings, and in not giving sufficient weight to the need for new management, the need for investigation by a disinterested trustee of alleged past management inefficiency, lack of skill and even wrongdoing, and the need for application of the 'absolute priority' rule of Chapter X but not of Chapter XI. Moreover in view of past payments and assertions of economical and successful administration of the debtor's affairs by the Receiver appointed under Chapter XI, it may be that only a 'minor adjustment of capital' is all that now needs to be accomplished to put the debtor back on its feet."

Pursuant to said remand, oral arguments were heard by me on June 28 and 29, 1965, at which affidavits in support of and in opposition to said motion were submitted. Decision was reserved pending the filing of memoranda by counsel for interested parties which have now been considered by me. At the original hearing on said motion in June, 1963, all creditors and stockholders who appeared at said hearing opposed said motion; now said motion is supported by certain large senior institutional creditors, particularly the Prudential Insurance Company and the First National Bank of Boston, which by virtue of two distributions from accumulated cash collected by the Receiver of the debtor's estate since his appointment on January 25, 1963 have been paid substantially all of the principal of their loans to the debtor. These senior creditors, on September 16, 1963, voted overwhelmingly to accept the modified plan of arrangement filed by the debtor, the terms of which are summarized in my opinion in In the Matter of American Guaranty Corporation, supra. Said plan contains a provision that no interest on the unsecured debts of the debtor shall be paid for the period beginning January 18, 1963 and ending eighteen months subsequent to the confirmation of said plan, or January 18, 1965, whichever date first occurs. This plan has never been confirmed because upon the motion of the SEC I enjoined confirmation pending the outcome of its appeal from my decision of September 11, 1963. The senior creditors, so-called, by virtue of certain subordination agreements are entitled to priority of payment and a conservative appraisal of the present financial condition of the debtor establishes that sufficient cash will be available not later than September 30, 1965 to satisfy the balance of the principal due on their claims. Their change of position since June and September 1963 is clearly motivated by their desire to avoid said waiver of interest to which they had previously agreed. They make no claim that they were induced to accept said modified plan of arrangement as the result of any concealment or misrepresentation of facts by the debtor, its past management or its counsel.

From the affidavits at said hearings in June, 1965, it is clear that there has been a substantial improvement in the cash position of the debtor since the appointment of said Receiver. Immediately upon his appointment he took possession of all its books and records. At his invitation, Domenic J. Perri, its former president and founder, who had been directing its operations, left its premises and has not in any way directly or indirectly interfered with or had any participation in the operations of the debtor

since January 25, 1963. The Receiver has also effected a practically complete change in the management personnel of the debtor. With the exception of one individual who is employed in a minor capacity, the entire management personnel has been changed.

Although a limited amount of new business has been written by the debtor since the appointment of said Receiver, he and present management personnel of the debtor have devoted their efforts primarily to the collection of its accounts receivable and the sale of other assets where such action was deemed to be required. As a result of their combined efforts, more than $18,000,000 have been collected by them.

In July, 1964 and January, 1965 two distributions from cash so accumulated were made by the Receiver among senior creditors on account of the principal of their respective claims pursuant to orders entered by the Referee in Bankruptcy. His order, dated July 17, 1964, authorized the Receiver to pay the amount of each such creditor's claim in full up to $2,500, or 35% of such amount, whichever was the greater, and his order of January 18, 1965, authorized the payment of the balance of each such creditor's claim, if any, up to $2,500, or 22.5% of such balance, whichever was greater. To permit of these distributions said modified plan of arrangement was further modified with the unanimous consent of the creditors and stockholders. These distributions amounted to $14,-100,000.

As a result thereof the amount of principal due on investment certificates was reduced from $3,307,324 to $341,997, and the number of investment certificate holders was reduced from 2558 to 96. The amount of principal owed to banking institutions has been reduced by 72.5%, the outstanding balance now being $1,-454,037, which is owed to 50 banks. Similarly, the amount owed as principal on notes owed to others than banks has been reduced by 72.5%, the present balance now being $1,144,377 owed to four holders of such notes. It further appears that at the present time there are approximately 1400 public holders of the subordinated debt, preferred and common stock of the debtor.

Despite these distributions, the Receiver has now accumulated cash in the amount of approximately $4,000,000, of which $650,000 has been set aside under the control of the Referee to provide for the payment of legal and other expenses which have been incurred in the Chapter XI proceedings. He estimates that by September 30, 1965 there will be enough cash available to pay in full the principal owed to senior creditors and by September 30, 1966, enough cash to pay in full the principal owed to subordinated creditors.

The evidence further establishes that while said appeal of the SEC was pending two proposals for the debtor's rehabilitation were submitted to the debtor and have been made available for examination by the creditors and stockholders. None of the parties, including the SEC, contends that either of these would be for the best interests of the creditors, and if these proposals are still pending, which appears at best extremely doubtful, both are clearly without merit from the standpoint of both the creditors and the stockholders.

The evidence also establishes that investigations, studies of the records of the debtor and inquiries by certain creditors, the Receiver, the Referee in Bankruptcy and competent counsel appointed by him have failed utterly to uncover any evidence of wrongdoing upon the part of past management. Any intimations of such wrongdoing are clearly unsupported by any probative evidence. In fact one of counsel for the Creditors' Committee stated in oral argument that he was perfectly satisfied with the investigation that had been conducted by said special counsel. In addition, it is clear that the new management of the debtor has adopted new methods of accounting, credit analyses and reforms which should prevent a repetition of the causes which led to the past financial difficulties of the debtor.

It is now clear that there is no absolute rule that the use of Chapter X is required in all cases where the corporate debtor is publicly owned or where the rights of public investor creditors are involved. In Securities and Exchange Commission v. American Trailer Rentals Co., supra, the Supreme Court said, 379 U.S. at pages 610, 611, 85 S.Ct. at page 522:

> "We agree with the parties that the principles of United States Realty and General Stores apply to and govern the result in this case. We reaffirm the holdings of these cases that there is no absolute rule that Chapter X must be utilized in every case in which the corporate debtor is publicly owned. As this Court has recognized, Congress has drawn no such hard-and-fast line between the two Chapters. * * *"

And 379 U.S. at page 613, 85 S.Ct. at page 523 the Supreme Court also stated:

> "We therefore reject the SEC's variation of its absolute-rule argument, advanced in this case, that would require the use of Chapter X in all cases in which the rights of public investor creditors are involved. The short answer is that, as with the SEC's original absolute-rule argument, Congress has drawn no such absolute line of demarcation between Chapters X and XI."

In reaffirming General Stores Corp. v. Shlensky, 1956, 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550, the Supreme Court further held at pages 614 and 615, 85 S.Ct. at page 524:

> "General Stores indicates the narrow limits within which there are exceptions to this general rule that the rights of public investor creditors are to be adjusted only under Chapter X. 'Simple' compositions are still to be effected under Chapter XI. Such a situation, even where public debt is directly affected may exist, for example, where the public investors are few in number and familiar with the operations of the debtor, or where, although the public investors are greater in number, the adjustment of their debt is relatively minor, consisting, for example, of a short extension of time for payment.

> "On the other hand, General Stores makes it also clear that even though there may be no public debt materially and directly affected, Chapter X is still the appropriate proceeding where the debtor has widespread public stockholders and the protections of the public and private interests involved afforded by Chapter X are required because, for example, there is evidence of management misdeeds for which an accounting might be made, there is a need for new management, or the financial condition of the debtor requires more than a simple composition of its unsecured debts."

The Supreme Court then applying the foregoing principles found that the purported plan of arrangement provided for a major adjustment of public debts and also that there was substantial evidence of misappropriation of assets and need for a complete reorganization which the proposed plan of arrangement purported to provide contrary to the provisions of Chapter XI. And further, at pages 616, 617 of its opinion, at page 525 of 85 S.Ct., the Supreme Court said:

> "Indeed, the facts of this case aptly demonstrate the need for Chapter X protection as a general rule on the above-stated principles. There is clearly a need for a study by a disinterested trustee to make a thorough examination of respondent's financial problems and management and submit a full report to the public-investor creditors. Respondent has never operated profitably, has always been in precarious financial condition, and apparently was hopelessly insolvent, in both the bankruptcy and equity sense, when the arrangement was proposed. At an earlier period its management apparently misappropriated substan-

tial corporate funds. * * * Finally, it is clear that there is need for an independent investigation of possible causes of action against the past and present management of respondent, and it is as true now as when Chapter X was enacted, that 'a debtor in possession cannot be expected to investigate itself.' * * "

■ In my opinion it is crystal clear that the facts in SEC v. American Trailer Rentals Co., supra, are manifestly distinguishable from those in the instant case. Here no major adjustment of publicly held debt is provided in the second modified plan of arrangement. The only adjustment of publicly held debt under said plan is the waiver of interest for the period beginning January 18, 1963 and ending January 18, 1965. In the instant case this waiver of interest amounts to substantially less than 10 per cent of the total indebtedness of the debtor at the time of the filing of its petition for relief under Chapter XI. While the Supreme Court has not specifically held that such a waiver of interest would constitute a minor adjustment of publicly held debt under Chapter XI, under all the circumstances of this case, I regard it as being a minor adjustment which does not require a transfer of these proceedings to Chapter X.

As hereinbefore recited, there have been repeated investigations of the affairs of the debtor, both before and after the appointment of the Receiver. This is not a situation where "a debtor in possession cannot be expected to investigate itself". Here the debtor ceased to be in possession when the Receiver took possession. For more than two years the books, records and assets of the debtor have been in his possession and subject to his scrutiny and that of the highly competent, conscientious Referee in Bankruptcy. Neither they nor special counsel appointed by the Referee have been able to uncover any misconduct or wrongdoing on the part of past management. I am satisfied that said investigation was sufficient, that there is no credible evidence of any wrongdoing by past management and no need for the appointment of a disinterested trustee under Chapter X to investigate possible causes of action against past management.

■ As the Supreme Court held in SEC v. American Trailer Rentals Co., supra, Chapter X is still the appropriate proceeding where there is need for new management. Viewing the factual developments as they now are, I am satisfied that there is now no need for new management. Domenic J. Perri, who was president of the debtor and who directed its operations prior to January 25, 1963, has long since resigned and has no part in its management. Its management personnel with one minor exception have been replaced. The results of their efforts during the past two years are clear evidence of their capacity and qualifications for the positions they now hold.

■ In the light of the progress that has been and is being made in the liquidation of the debtor's receivables and the substantial value of its remaining assets, I am satisfied that not later than October 1, 1966, all creditors of the debtor will be paid the entire amount of their respective claims together with the interest that has accrued thereon since January 18, 1965. I am also satisfied that the debtor will then be in a position to resume profitable operations on a scale more restricted than that which induced its financial difficulties and that these results will be obtained with at least some substantial equity being preserved for its stockholders, a great many of whom are public investors. Having in mind the substantial expenses that have already been incurred in this proceeding, a transfer at this time to the costly and protracted proceedings of Chapter X, where the rule of strict priorities prevails, could well lead to disaster for the subordinated creditors and stockholders of the debtor. The fact that some equity will be preserved for the stockholders is not a ground for the dismissal of the debtor's petition. Section 366 of the Bankruptcy

Act, 11 U.S.C.A. § 766, provides in part that:

"Confirmation of an arrangement shall not be refused solely because the interest of a debtor, or if the debtor is a corporation, the interests of its stockholders or members will be preserved under the arrangement."

After a careful review of the factual situation as it is now in the light of the criteria for the exercise of my discretion as developed by the Supreme Court in SEC v. American Trailer Rentals Co., supra, I am of the opinion that the debtor's petition should not be dismissed, or, in the alternative, dismissed unless it is amended in such a way as to transfer to proceedings under Chapter X. It is my considered judgment that the continuation of the Chapter XI proceedings will best serve the public and private interests herein concerned.

Accordingly, an order will be entered affirming the order entered herein on September 11, 1963.