In the Matter of **ARLAN'S DEPART-MENT STORES, INC., et al.**

No. 73 Bkcy. 468.

United States District Court, S. D. New York.

Feb. 20, 1974.

---

Marvin E. Jacob, Asst. Regional Administrator, for the Securities and Exchange Comm., Jerome Feller, and Robert L. Anthony, New York City, of counsel.

Ballon, Stoll & Itzler, New York City, for Debtor in Possession, Frederick E. M. Ballon, and Ronald S. Itzler, New York City, of counsel.

Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Official Creditors Committee and Debenture Holders Protective Committee, Alan S. Fellheimer, Philadelphia, Pa., of counsel.

Ruben, Schwartz & Silverberg, New York City, Co-Attys. for Official Creditors Committee, Seymour J. Silverberg, New York City, of counsel.

Leinwand, Maron, Hendler & Krause, New York City, Co-Attys. for Official Creditors Committee, Elliot L. Krause, New York City, of counsel.

Guggenheimer & Untermyer, New York City, for Schroder Trust Co., Herbert S. Camitta, New York City, of counsel.

Krause, Hirsch & Gross, New York City, for Official Bank and Institutional Creditors Committee.

Zalkin & Cohen, New York City, for Institutional Lenders Committee, Leonard Zalkin, New York City, of counsel.

Vladeck, Elias, Vladeck & Lewis, New York City, for Retail Clerks International Ass'n, and Local Affiliates, Sheldon Engelhard, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The Securities and Exchange Commission ("SEC"), by order to show cause, moved, pursuant to Section 328 of the Bankruptcy Act, 11 U.S.C. § 728, for leave to intervene in the pending Chapter XI proceedings of Arlan's Department Stores (the "debtor") and to dismiss the Chapter XI petitions filed by the debtor and the proceedings under Chapter XI and to require proceedings in compliance with Chapter X. This court issued the order on January 3, 1974, with a stay requiring that no steps should be taken in the pending Chapter XI proceeding which might be prejudicial to a potential Chapter X trustee, without leave of the court. To suit the convenience of counsel a hearing on the motions was postponed until February 4, 1974, at which appearances were made by the Assistant Regional Administrator of the SEC and counsel for the various interests, including the debtor in possession, the Official Creditors Committee, the Debenture Holders Protective Committee, the Successor Trustee for Debenture Holders, the Institutional Lender Committee, and the Retail Clerks International Association and Local Affiliates.

The issue to be resolved is whether the debtor's attempted corporate rehabilitation under the Bankruptcy Act may be conducted under Chapter XI of the Act, 11 U.S.C. § 701, et seq., or whether dismissal of the Chapter XI proceedings and transfer to proceedings under Chapter X, 11 U.S.C. § 501, et seq. are required.

*Background Facts:*

Arlan's Department Stores and its wholly-owned subsidiaries make up a retail store chain spread over several states, selling wearing apparel as well as hardlines of various sorts. It is a large public company. Arlan's has three major classes of unsecured creditors whose rights would be affected by whatever arrangement is ordered. As of the filing of the original petition there existed approximately 15,000 trade creditors having claims totalling approximately $35,000,000. Lending institutions are creditors of the debtor in the sum of approximately $21,000,000, $6,000,000 of which is on a par with trade creditors, the balance having been subordinated to the trade pursuant to certain loan agreements. The debtor has issued to the public 6% convertible subordinated debentures in the sum of $15,000,000. Those debentures are subordinated to the lending institution debt by virtue of the provisions of the trust indenture. In addition, as a result of the debtor's breach of lease obligations to landlords in connection with stores it formerly operated, there may be an additional $15,000,000 liability.

Arlan's has outstanding the following issues of securities: (1) the 6% convertible subordinated debentures held by approximately 725 widely dispersed public investors, (2) 3,702 shares of preferred stock held by six banks and insurance companies, and (3) 2,775,414 shares of common stock held by approximately 6,000 persons.

For several years Arlan's appeared to be reasonably profitable and expanded rapidly. Its expansion was financed by bank creditors, public investors and retained earnings. It paid virtually no dividends. However, during fiscal 1970, the year in which the debentures were issued, Arlan's profits declined markedly and in fiscal 1971 it began suffering substantial losses which have continued unabated. For the three months ended April 29, 1973, Arlan's reported unaudited net losses aggregating close to $8,000,000. The debtor surmises that it is the heavy debt load of the company which led to economic decline and a modification of that load, streamlining

its operations, and an infusion of new funds would rehabilitate it.

As a result of the substantial losses incurred during the fiscal year ended January 30, 1971, Arlan's determined to halt further expansion and to dispose of certain stores. At that time, Arlan's operated 119 stores, including 16 "Play World" stores. During the year ended January, 1972, Arlan's opened two new stores and closed, leased or sold 41 stores. During the year ended January, 1973, Arlan's disposed of seven additional stores, so that as of the date of the filing of the original petition for an arrangement, May 14, 1973, it operated 73 stores. Since then it has eliminated approximately another 38 stores.

### The Proposed Arrangement:

A proposed Chapter XI arrangement was promulgated by the various creditor representative groups, among which were representatives of the debenture holders. In general, the plan provides as follows: the claims of the administration and priority creditors were to be paid in full upon terms agreed upon between the debtor and such creditors. General creditors (including but not limited to trade creditors, senior institutional debt and landlords with breach of lease claims) were to receive 15% of their respective claims in cash, payable in percentages varying from 1% to 5% over a number of years, as well as one share of common stock of Arlan's for each $40 of debt. The subordinated institutional lenders and bankers were to receive one share of the common stock of the debtor for each $27.50 of the indebtedness. The preferred stock owned by those institutional lenders was to be surrendered and exchanged for 66,000 shares of Arlan's common stock. The subordinated debenture holders were to receive one share of common stock for each $27.50 of indebtedness. Present management was to receive common stock equal to 10% of the issued and outstanding common stock of Arlan's, and an outside independent investor was to receive common stock equal to 33⅓% of the issued and outstanding shares of common stock.

### Application of Controlling Principles:

At the February 4, 1974 hearing, the court announced that if it determined, after a study of the case law, that it had a wide range of discretion in making the choice between proceedings in Chapter X or XI, the final determination would be based upon the court's view of what would be best for the company and best for the public. It appeared at that point that there were substantial factors here that would favor the choice of Chapter XI. The debtor, being a retail store chain, is highly dependent upon trade credit and there was reason to believe that if it went into Chapter X such credit would not be forthcoming, resulting in the serious possibility of Arlan's complete collapse. Generally, proceedings under Chapter X are slower and more costly and this debtor does have a somewhat urgent need for the infusion of new capital. The proposed Chapter XI arrangement did appear to be acceptable to all segments of the debtor's creditors and was the result of a private investigation of the company's problems and negotiations among the interested parties. Finally, it is asserted that the public debenture holders were in fact being put in a more advantageous position by the proposed plan than they could ever be under Chapter X. Since they are subordinated to the $21,000,000 of lending institutional debt, under a strict priority doctrine, as often mandated under Chapter X, they could not receive their share until the senior creditors were paid in full. Under the proposed plan, despite their subordinated status, they would receive the same compensation as the senior debt—one share of stock for each $27.50 of indebtedness.

Despite the initial predilection for a proceeding under Chapter XI, I must now conclude that Chapter X is the appropriate context for the rehabilitation of this debtor. While retaining concern for doing what is best for the company and the public, I must adhere to and rely upon the thought-out principles set

forth by the Supreme Court and our Circuit, which require that in a situation such as the immediate one, the interests of the public will be studied, ascertained and best served under Chapter X.

██ The Supreme Court has made it clear that neither this court, nor any other district court, has unbridled discretion in deciding between a proceeding under Chapter X or XI.

"Nothing in that opinion [General Stores v. Shlensky, 350 U.S. 462, 76 S.Ct. 516, 100 L.Ed. 550 (1956)] supports respondent's view that the issue of whether Chapter X or XI is required permits open-ended discretion by a district court to decide on a case-by-case basis, without reliance on the principles which we have reaffirmed, whether in its opinion it would be better for a particular debtor to be in Chapter X or Chapter XI." Securities and Exchange Commission v. American Trailer Rentals Co., 379 U.S. 594, 619, 85 S.Ct. 513, 527, 13 L. Ed.2d 510 (1965).

My discretion is limited to a factual determination of whether the debtor needs a pervasive reorganization rather than a simple composition of unsecured debts. *American Trailer Rentals, supra,* 379 U. S. at 619 n. 18; General Stores v. Shlensky, 350 U.S. 462, 76 S.Ct. 516, 100 L. Ed. 550 (1956). Once that question is decided, then the guidelines established by the Supreme Court on the proper chapter to proceed under must be followed.

In *American Trailer Rentals* the Supreme Court reaffirmed the principle that there is no absolute rule which requires that Chapter X must be utilized in every case in which the corporate debtor is publicly owned or even where the rights of public investor creditors are involved. That had been made clear in its earlier decision in the *General Stores* case.

"The character of the debtor is not the controlling consideration in a choice between c. X and c. XI. Nor is the nature of the capital structure. It may well be that in most cases where the debtor's securities are publicly held c. X will afford the more appropriate remedy. But that is not necessarily so. *A large company with publicly held securities may have as much need for a simple composition of unsecured debts as a smaller company. And there is no reason we can see why c. XI may not serve that end. The essential difference is not between the small company and the large company but between the needs to be served."* General Stores, supra, 350 U.S. at 466, 76 S.Ct. at 519. (Emphasis added.)

Accord, Securities and Exchange Commission v. United States Realty and Improvement Co., 310 U.S. 434, 447, 60 S. Ct. 1044, 84 L.Ed. 1293 (1940).

██ It is not the character of the debtor, but rather the degree and nature of the required reorganization that is determinative. Where the rights of public investor creditors are to be adjusted in more than a minor way, then the safeguards and procedures of Chapter X are required. *American Trailer Rentals, supra,* 379 U.S. at 614, 85 S.Ct. 513; Securities and Exchange Commission v. Canandaigua Enterprises Corp., 339 F.2d 14, 19–20 (2d Cir. 1964).

"The aims of Chapter X as thus revised were to afford greater protection to creditors and stockholders by providing greater judicial control over the entire proceedings and impartial and expert administrative assistance in corporate reorganization through appointment of a disinterested trustee and the active participation of the SEC." *American Trailer Rentals, supra,* 379 U.S. at 604, 85 S.Ct. at 519.

██ This is in contrast to the provisions of Chapter XI, which are limited to adjustment of unsecured debt, leave the arrangement and company basically in the hands of the debtor, and do not provide for an independent study by or supervision of a trustee. This procedure is recognized as being primarily

concerned with the short-term interests of trade creditors.

"In short, Chapter XI provides a summary procedure whereby judicial confirmation is obtained on a plan that has been formulated and accepted with only a bare minimum of independent control or supervision. This, of course, is consistent with the basic purpose of Chapter XI; *to provide a quick and economical means of facilitating simple compositions among general creditors who have been deemed by Congress to need only the minimal disinterested protection provided by that chapter.*" *Id.* at 606–607, 85 S.Ct. at 520. (Emphasis added.)

A simple composition would be one, for example, where there are a small number of public investors who are familiar with the operations of the debtor or even where there are a greater number of investors, but "the adjustment of their debt is relatively minor, consisting, for example, of a short extension of time for payment." *Id.* at 614, 85 S.Ct. at 524. Only if public debt is adjusted in such a minor way are the less precautionary proceedings of Chapter XI to be utilized.

■ Applying these guidelines, it is clear that Chapter X is the necessary context in which to rehabilitate Arlan's. Its debentures are held by approximately 725 widely dispersed public investors who are not closely involved in the operations of the company. The rights of the public debenture holders are being radically adjusted, insofar as publicly held debt is being converted into equity. The capital structure of the company is being subjected to a major reorganization. The holding in *American Trailer Rentals* is not only relevant, but controlling:

"Applying the above principles, it is obvious that Chapter X is the appropriate proceeding for the attempted rehabilitation of respondent in this case. Here public debts are being adjusted. The investors are many and widespread, not few in number inti-mately connected with the debtor, and the adjustment is quite major and certainly not minor. *These facts alone would require Chapter X proceedings under the above-stated principles.*" *Id.* at 615, 85 S.Ct. at 524 (emphasis added).

*See also* SEC v. Canandaigua, *supra*, 339 F.2d at 19–20.

While counsel for the debtor argues that the *American Trailer Rentals* rule is applicable only where the adjustment is detrimental to the public investors the court there clearly stated that where a major adjustment of public debt was involved, that was sufficient to merit Chapter X, regardless of the specific effect of the proposed arrangement or special circumstances. It was precisely such a case-by-case approach that the court was foreclosing. The debtor's reliance on Grayson-Robinson Stores, Inc. v. Securities and Exchange Commission, 320 F.2d 940 (2d Cir. 1963), which utilized the pragmatic approach of rehabilitating the debtor by paying off creditors, is misplaced insofar as there no publicly held debt was adjusted.

■ It is asserted that here the proposed arrangement is supported by all the creditor interests, including the public debenture holders, and that group in particular will be better served under the Chapter XI proposal. I must agree with the SEC that there is no certainty as to how the debenture holders will fare under Chapter X, and the beneficial treatment they are supposed to receive under the proposed plan could not be conclusively determined unless there were a thorough, independent study of the debtor's condition. In both the *United States Realty* and *American Trailer Rentals* cases, the court implied that even if a proposed arrangement under Chapter XI is not blatantly unfair to public creditors, where major adjustments of their debt are called for, the independent and disinterested proceedings of Chapter X are required to determine precisely what is fair and equitable relative to the debtor's financial status and circumstances. While it is regretta-

ble to have to insist on a course that none of the creditors, including the debenture holders, may like, this cannot be the controlling consideration and ultimately the public investors may be better served by the thoroughness and disinterestedness of Chapter X. SEC v. Canandaigua, *supra,* 339 F.2d at 21; *American Trailer Rentals, supra,* 379 U. S. at 617–618, 85 S.Ct. 513.

I am concerned by the serious possibility that the debtor's line of credit will be substantially extinguished under Chapter X. It is not inevitable, and I regret that people in the trade may wrongly construe a proceeding in Chapter X to be the harbinger of bankruptcy and liquidation. Hopefully, the proceeding can go forward expeditiously and with minimal expense and if the debtor is not suffering from terminal financial ills, a successful rehabilitation will occur.

For the foregoing reasons, the SEC's motions to intervene and to dismiss the Chapter XI petitions and proceedings, unless within the time specified by this court the petitions are amended to conform to the provisions of Chapter X, are granted.